WILLIAM HANSCOM *vs.* ELLA J. BLANCHARD, et al.

Androscoggin.    Opinion December 13, 1918.

*Agreements for the sale of real estate. Giving of options. General rule in regard to rights of parties where options have been given. General rule covering the right of brokers to have commissions on sales of real estate. Rule where the broker may bring the parties together but the supposed purchaser fails to carry out his agreement in regard to transfer.*

This is an action for the recovery of commissions for the alleged sale of real estate and comes up on report. Oramandel Blanchard makes no defense. But Ella J. Blanchard defends upon the ground that the plaintiff did not make a sale or procure a purchaser, in accordance with his contract of brokerage.

*Held:*

1.  That the parties whom the plaintiff brought to the defendants as purchasers entered into a contract of purchase that bound them as optionees only.

2.  That an option is neither a sale nor an agreement to sell; but only a right to buy.

3.  To entitle a broker to his commissions the option must be exercised, unless prevented by the sellers.

4.  That in this case the exercise of the option was not prevented by the sellers.

5.  That the plaintiff by bringing these parties together did not earn his commissions.

Action on the case to recover commissions claimed as due plaintiff on account of sale of defendants' lands. The defendant, Oramandel Blanchard, entered no appearance, and in behalf of Ella J. Blanchard a plea of general issue was filed. At the close of testimony, by agreement of parties case was reported to Law Court. Judgment in accordance with opinion.

Case stated in opinion.

*McGillicuddy & Morey,* for plaintiff.

*E. E. Richards, Frank W. Butler, and W. H. Judkins,* for defendant.

Sitting: Cornish, C. J., Spear, Hanson, Philbrook, Dunn, Morrill, JJ.

Spear, J.  This is an action for the recovery of commissions for the alleged sale of real estate and comes up on report.  Oramandel Blanchard makes no defense.  But Ella J. Blanchard defends upon the ground that the plaintiff did not make a sale or procure a purchaser in accordance with his contract of brokerage.  The first contract between the plaintiff and defendants was of the following tenor: "Stratton, Me., March 28th 1916.  In consideration of $10.  Ten Dollars We Mrs. Blanchard and Mr. O. Blanchard Gives Wm. Hanscom An Option Until July 1st, 1916 on our land known as the Hedghog land and Bemis land at $10. ten Dollars per acre as the deeds calls for about 2270 acres with all buildings thereon.  And agree to go show the Lines and Timber to any Customer he gets, we agree to pay Wm. Hanscom as a commission whatever he furnishes a customer for over the said ten dollars."  She contends this was not a contract for commission, but an option to buy.  Construing this instrument with reference to all its phraseology, although it is somewhat mixed and inconsistent in its language, we are of the opinion that it was intended by the parties to be regarded as a contract for a commission on a sale above ten dollars per acre.  The language "to any customer he gets" and to pay "as a commission whatever he furnishes a customer for over the said ten dollars" seems to quite clearly indicate that the defendant understood that the plaintiff was to realize his commission from a sale to another, and not from a purchase by himself, under the word "option" as used in the first part of the instrument.  The subsequent action of the parties also goes to show that this was their understanding, since the defendants, by virtue of parties being introduced under this agreement, did proceed to make an option to the parties thus produced.

Without question the plaintiff by virtue of the above instrument brought parties to the defendant, who were desirous of purchasing the tracts of land described therein and with these parties the defendants, themselves, made a contract for a disposal of the lands described.  The interpretation of this new instrument determines the rights of the parties in this case.  If it was a contract of sale, by which the parties were mutually bound, then the plaintiff would be

entitled to his commission. *Veazie* v. *Parker*, 72 Maine, 443. It was the duty, however, of the broker in the first instance to procure a purchaser who was ready and willing to meet the exact terms of his contract to make a sale. Even an offer of better terms will not suffice. 4 R. C. L., 313, 52. But if a broker introduces parties with whom the seller makes a different contract, resulting in a sale, he is entitled to his commission. *Veazie* v. *Parker*, supra; *Ward* v. *Cobb*, 148 Mass., 518; *Roche* v. *Smith*, 176 Mass., 595; *Johnson* v. *Hallend*, 211 Mass., 363, 4 R. C. L., 413, 52. See also exhaustive note, *Hoadley* v. *Savings Bank of Danbury, Conn.*, L. R. A., 44, 32.

The present case, however, does not fall within either of the above rules entitling a broker to his commission. The contract between the parties to the alleged sale, upon which the plaintiff claims his commission, was not one by which the parties were mutually bound; it was unilateral, the vendor alone was bound. The character of this contract appears from an observation of its terms. It describes the parties, the tracts of land to be conveyed, the terms of payment, the price per acre, the time of performance and the consideration which is to be allowed as an initial payment upon the consummation of the contract. The concluding paragraph of this instrument is as follows: "In the event that the party of the second part shall fail to fulfill the agreements herein entered into, then the sum of one thousand dollars already acknowledged as paid shall be forfeited to the party of the first part." This clause, read in connection with the rest of the contract, clearly confines the contract to the exercise of an option on the part of the vendees. For definition, see Option, Words and Phrases, Vol. 6; Second Edition, Vol. 3.

An agreement in writing to give a person the option to purchase lands within a given time, at a named price, is neither a sale nor an agreement to sell. It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price at a given time. The rights of a broker in case of an option granted by his principal to a would be purchaser are well stated in 4 R. C. L., 315, 53. "Where a broker is engaged to negotiate a transfer or sale of certain real or personal property, the mere procurement of a prospective purchaser who enters into an option to buy the property in question but never in fact does so is not sufficient to constitute a performance by the broker

of his contract of employment, and he is not entitled to his commissions, nor even to a percentage of the earnest money deposited by the defaulting optionee. The fact that the employer consents to entering into a conditional or optional contract to purchase cannot be construed as a waiver by him of the original terms of employment and an acceptance of such services as a complete performance on the part of the broker. It is a matter of common knowledge that sales are frequently effected through options. By granting the option, the owner is merely helping to bring about the sale which he employed the broker to make. It is a step in that direction. It is not the end, but rather the means to an end. Consequently such action on the part of the owner does not imply that he has made a new contract with the broker by which he agrees to pay for something different from the services he originally contracted for, but merely indicates a desire upon his part to aid the broker in the performance of the original agreement." See also exhaustive note in *Warnekros* v. *Bowman,* 43 L. R. A., (N. S.), 91. It is therefore evident as a matter of law, that an optional contract to purchase land is not a compliance with a broker's contract to sell land. A broker has not found a purchaser so as to be entitled to compensation until the option has been exercised and the contract completed.

There is no claim that the option in the present case has been completed by a sale of the property in accordance with its terms. But the fact that an option for the purchase of real estate has not been exercised does not, per se, conclude the broker. It is well settled that if the optionee is ready and willing to exercise the option, but is prevented by the refusal of the owner to comply with the terms of the agreement, the broker is then entitled to his compensation. The rule is stated in 4 R. C. L., 315, 53, as follows: "While, as above shown, according to the great weight of authority the mere procuring of one to take an option does not entitle the broker to commissions if the optionee elects not to exercise the same, yet it is apparently well settled that the broker is entitled to his commissions if the option is actually exercised, or the optionee is willing to exercise it but is prevented from so doing by the refusal of the owner to comply with his part of the agreement." See also L. R. A., (N. S.), 94, note.

This brings us to the one question of fact involved in the case: Who was in fault in refusing to abide by the terms of the option? It

is not our purpose to discuss the evidence in detail, as it is so fragmentary as to just what the optionees were able to do after getting the option, as to practically preclude such discussion.    In the first place it is apparent that the optionees were not able to finance the proposed purchase.    They were evidently trying to find some one whom they could induce to finance it for them.    But the evidence fails to show that any one appeared who was ready or offered to comply with the terms of the option.    But in order to hold the option this must be done.    It is as much incumbent upon an optionee to comply with the terms of his option, as upon a direct contractee in an agreement of sale, to comply with the terms of his agreement.    And we have before seen that such compliance is minutely required.    R. C. L., 315, 52, supra.    The option provided that "on or before the first day of August, 1916, the parties agree to meet at Farmington" where they were to carry the agreement into effect.    Nothing was done at this time.    The optionees did not appear.    On the 31st day of July one of them, Mr. Mason, met the defendant on her way to Farmington and said to her:    "I have been unable to raise this money, but I have a new proposition which is a cash deal.    I have an explorer by the name of Mr. West with me, and I have some bankers that are interested, and upon the report of Mr. West, if his report is favorable I can put in the money for the whole tract, and I would like a little more time.    Q.    What answer did you give him?    A.    I told him that I was on my way to Farmington to carry out my part of this agreement and in event this deal didn't go through and he wanted—no, I asked how much time that he wanted.    He stated, "Let me see.    It will take two or three days to explore the land, a day to return to Lewiston, a day to make my report," he says, "Mrs. Blanchard, one week is sufficient."    She gave Mr. Mason one week.

That was an entirely new contract, proposed by the optionee Mr. Mason, and relieved the defendant from the charge of any default, in not being present at Farmington, on the first day of August, to carry out the terms of the option.    This option, declared on in the plaintiff's writ, and upon which he relies as the contract of the parties procured by him, became invalid after August first, both by lapse of the time, and by the substitution of a new contract.    But the new contract was to run a week, and nothing being done within this time, all the contractual relations of the optionee and the defendant early in August

came to an end.   The evidence of Mrs. Blanchard is fully corroborated by Mr. John C. West, the very party referred to by Mr. Mason in the conversation above testified to by Mrs. Blanchard.   Mr. West had been approached by Mason and O'Brien to finance this proposed purchase.   He accordingly in September had an interview with Mrs. Blanchard in regard to the matter, which on direct examination he recites as follows:   Q.   What did she say to you at this time that you had this conversation with her?   A. I talked with her about financing the deal and taking it up on a cash basis.   I had parties that had the money and had a proposition to finance it, to take up the whole tract, as well as other tracts there that we have under consideration.   And I explained it to her, and she said that well, she didn't know but she would look at it favorably, but she wanted to consult someone, and I told her that I wanted her to.   I says "It means a cash deal if I can have the deeds in a certain way."   I explained it.   He saw her again the next day.   In answer to the question, What did she say then, he testified:   A.   She said that she couldn't consider it, it was only a drag out, or something like that, and it was all off; and I told her under those circumstances I wasn't going to say any more about it—probably the other parties would have something to say, but as far as I was concerned, I should stop.

Neither the testimony of Mrs. Blanchard nor Mr. West is in any way contradicted or modified.   It is accordingly clear that the optionees were never prepared to comply with the terms of their option, nor did they furnish any one who was.   They were working upon an entirely new scheme of trading upon a cash basis to which the defendant was willing to accede and gave an option, on a cash basis, for a week.   It accordingly results that the optionees, in their agreement of July 5, failed to comply with its terms, and that their option was lost by their own fault and not the fault of the defendant, Ella J. Blanchard.

*Judgment for defendant, Ella J. Blanchard.*