(No. 19301.

OLGA MOHNK, Appellee, *vs.* PHILIP W. SEYFARTH, Appellant.

*Opinion filed April 17, 1930—Rehearing denied June 5, 1930.*

DENEEN, HEALY & LEE, (HARRY W. LIPPINCOTT, and DONALD N. SCHAEFFER, of counsel,) for appellant.

DAWSON, DAWSON & SCHNEBERGER, (MITCHELL DAWSON, of counsel,) for appellee.

Mr. COMMISSIONER EDMUNDS reported this opinion:

On December 1, 1925, Olga Mohnk, appellee, filed in the circuit court of Cook county an application for initial registration of title to certain land. Philip W. Seyfarth, appellant, filed an answer, alleging that he had entered into contract with Christian Krueger, the authorized agent of

Mrs. Mohnk, for the purchase of the land in question; that he had been at all times ready to pay the stipulated purchase price provided good and sufficient warranty deed were delivered to him, and that title to the property should not be registered in the name of Mrs. Mohnk. Attached to appellant's answer was a copy of the contract between himself and Krueger. Appellant also filed an application for initial registration of title in his name. To appellant's application Mrs. Mohnk filed answer. Krueger filed answer to Mrs. Mohnk's application, alleging that the contract above referred to by appellant was entered into by himself upon behalf of Mrs. Mohnk as her duly authorized agent. The matter was referred for hearing and report to the chief examiner of titles, who recommended that a decree be entered in accordance with the prayer of appellee; that the land be brought under the operation and provisions of "An act concerning land titles," approved and in force May 1, 1897; that the title in fee simple of Mrs. Mohnk be confirmed and that the application of appellant be dismissed for want of equity. The case is here on appeal from a decree of the chancellor, entered in conformity with the examiner's report.

The property in question is an 80-acre farm, upon which Olga Mohnk had lived for twenty-seven years. At the time of filing application she was a widow with three children, the youngest of whom attained his majority during the pendency of this suit. Krueger was cashier of the First National Bank of Blue Island, with which he had been connected for eleven years. He was also a licensed real estate broker, having been engaged in the real estate brokerage business for about sixteen or seventeen years in the territory surrounding Blue Island. Seyfarth was Krueger's nephew and for eight years had been assistant cashier of the bank. Seyfarth was also a licensed real estate broker and acted jointly with Krueger in a number of real estate deals, about sixty per cent of his brokerage transactions being, however,

independent. For many years there had been a mortgage on the Mohnk farm. Upon behalf of the Blue Island bank Krueger was in charge of this mortgage, and Mrs. Mohnk had dealt with him not only in payment of interest thereon but also in having the instrument renewed and finally in paying it off. Mrs. Mohnk had known him since he became connected with the bank. She had a safety deposit box there and came in from time to time to cash checks. Upon these occasions she passed Krueger's desk and he often spoke to her. The examiner of titles found "that from the examination of said Olga Mohnk upon the hearing of this cause she is not a woman of quick mentality and that it is hard for her to understand the questions put to her."

On May 4, 1925, Mrs. Mohnk executed and delivered to Krueger a document in the words and figures following:

"BLUE ISLAND, ILL., *May 4th, 1925.*
"*To Christian Krueger, Blue Island, Ill.*

"For and in consideration of one dollar ($1.00) the receipt of which is hereby acknowledged I hereby appoint you exclusive agent to sell for me and in my names and to sign a binding contract in my behalf for the sale of the following described property: East ½ of the N. E. ¼ section 1, township 36, range 12 Orland 80 acres more or less together with all the improvements thereon. You are to net me twenty thousand (20,000.00) dollars. All over said amount for which the above described property is sold is to be retained by you. In case the above described property is sold or disposed of within the time specified I agree to make the purchaser a good and sufficient warranty deed to the same and to furnish a complete merchantable abstract of title brought down to date at our expense. This contract to continue until March 1st, 1926, and thereafter until terminated by me giving unto you as agent five days notice in writing.          OLGA MOHNK."

The testimony as to what occurred prior to the execution of the above document signed by Mrs. Mohnk is somewhat conflicting. Krueger testified for Seyfarth that two or three months prior to May 4, 1925, Mrs. Mohnk came to him (Krueger) and said she wanted to sell her farm but did not want to sell for as low a price as a man by the name of John Schuntz would offer; that she asked him what he thought he could get, and he said he would try to

get her $250 an acre, net; that she should go ahead and talk it over with her boys, and, if they were thoroughly satisfied, to come back and give it to him in writing and he would try to sell it; that in May she came to the bank and told him she and her children were satisfied and wanted to sell, whereupon the above document of May 4 was executed by her. On the other hand, Mrs. Mohnk testified that when she paid the last of the mortgage off, on the 10th or 11th of December, 1924, Krueger said: "Mrs. Mohnk, wouldn't you like to sell your farm? It would be easy to sell while you paid the mortgage off;" that after New Year's, when she was in the bank again, Krueger asked her if she had thought it over and would like to sell the farm, and she told him she would not like to, yet; that later he sent a card telling her to come in and get the release deed, which she did; that he asked her upon that occasion if she would sell, and she said no, to which he replied that he could give her $20,000 for it; that she said she did not care to sell—that that price was not high enough; that later on she was in the bank again, and he said he could not give her more than $20,000; that she said he should try and get more out of it, but he said no, he could not; that she said she would like to get $300 an acre, but he said no—the land prices were going down instead of up; that later on she signed the above contract authorizing him to sell. This document was on a typewritten form prepared by Krueger and the blanks were filled in by him in his handwriting. Krueger further testified that after Mrs. Mohnk executed this authorization agreement he offered the property to several people other than Seyfarth; that he tried to get more than $20,000 and offered it for all kinds of figures, as high as $40,000, and that he was interested in the sale of the northwest corner of One Hundred Twenty-seventh street and Harlem avenue, a mile from the Mohnk farm.

On August 3, 1925, Krueger and appellant executed the contract relied upon by appellant in his answer and cross-

application. It recited, among other things, that "Christian Krueger, authorized agent of Olga Mohnk, hereby agrees to sell, and Philip W. Seyfarth agrees to purchase, at the price of twenty thousand ($20,000) dollars, the following described real estate," describing the property in question; that "possession to be given on or before March 1, 1926;" that "said purchaser has paid two thousand ($2000) dollars as earnest money, to be applied on said purchase when consummated, and agrees to pay on or before February 1, 1926, within five days after the title has been examined and found good, the further sum of eighteen thousand ($18,000) dollars, at the office of First National Bank of Blue Island, Illinois, provided a good and sufficient general warranty deed conveying to said purchaser a good title to said premises, with waiver and conveyance of any and all estates of homestead therein and all rights of dower, inchoate or otherwise, (subject as aforesaid,) shall then be ready for delivery," and that "a certificate of title issued by the registrar of titles of Cook county or a complete merchantable abstract of title, or a merchantable copy, brought down to date, or a merchantable title guaranty policy, to be furnished within a reasonable time." The contract provided for forfeiture of earnest money upon default of the purchaser, stated that time was of the essence, and concluded: "In testimony whereof, said parties hereto set their hands, this 3d day of August, A. D. 1925. Christian Krueger, authorized agent of Olga Mohnk. Philip W. Seyfarth." It was recorded August 10, 1925.

Krueger testified that after this contract was signed he wrote to Mrs. Mohnk and told her the property was sold, asking her to bring in her abstract so that he could have it brought down to date; that he had a conversation with her and asked her to bring in the abstract as he had sold her farm, and she said just as soon as she was through with the threshing she would bring it in; that she never brought it in and he had no further conversations with her;

that he later received notice that she was attempting to cancel the contract. Under date of August 27, 1925, Mrs. Mohnk addressed to Krueger and Seyfarth letters in which she asserted that the agreement of sale between them was not her agreement and had not been authorized by her and that all authority as agent claimed by Krueger was revoked.

Whatever right Seyfarth may have to the property involved in this case arises out of and by virtue of the above agreement entered into between him and Krueger, and his assignments of error center around the question as to whether the chancellor erred in refusing, in effect, to grant specific performance thereof to him as against Mrs. Mohnk. Specific performance of a contract cannot in all cases be demanded as a matter of right. Whether or not it shall be awarded rests in many cases in the sound discretion of the chancellor, and is to be determined from all the facts and circumstances surrounding it. Unless the record shows that the parties to a contract have entered into the same fairly and understandingly, specific performance will not be granted as a matter of right but the granting thereof rests in the sound discretion of the chancellor, subject to review only in case of abuse of that discretion. *Carver* v. *VanArsdale,* 312 Ill. 220.

The examiner of titles and the chancellor found, among other things, that, unknown to Mrs. Mohnk, Krueger and Seyfarth had entered into an agreement with each other, the effect of which was that Krueger would be, and was, acting as the agent of both Mrs. Mohnk and Seyfarth, with full knowledge on the part of Seyfarth but without any such knowledge on the part of Mrs. Mohnk; that Seyfarth was the owner of 80 acres adjoining Mrs. Mohnk's property, and that Seyfarth was to take Mrs. Mohnk's property and was to give Krueger a commission of five per cent when the sale of the other 80 acres then owned by Seyfarth was made by Krueger; that Krueger did not disclose to Mrs. Mohnk that he was dealing with Seyfarth,

and that Mrs. Mohnk did not know anything about the arrangement between Krueger and Seyfarth. In the course of his direct examination Krueger had been asked by the examiner of titles, referring to the contract between Krueger and Seyfarth, "Was there any consideration for this contract other than what purports to be in here—other than $20,000?" Krueger replied, "That is what she was to get—$20,000." The examiner further asked, "Was there anything else you were to get?" Krueger answered, "Yes, but from another angle." On cross-examination by counsel for Mrs. Mohnk, Krueger was asked: "You stated on direct examination, in answer to the question were you getting anything more, you stated, 'Yes, from another angle.' Will you explain what you mean by that?" Kreuger answered: "Mr. Seyfarth owned the adjoining 80 north of this land, and when I sold the 80 for him—when I handled this 80 for him—it was understood between him and I he was to get this particular 80, and he would pay me a commission out of the sale of the 80 adjoining it on the north." Krueger further testified that this commission was to be five per cent upon $20,000; that the other property was sold for $20,000, furnishing the $20,000 "that went into this deal;" that he had received his commission thereon in the amount of $1000, and that he told Mrs. Mohnk nothing about this agreement. Thus, for $20,000 Krueger turned Mrs. Mohnk's property to Seyfarth; to get the $20,000 to pay Mrs. Mohnk, Seyfarth's adjoining tract of the same size was sold to another party for that amount; as part of the deal Seyfarth agreed to pay Krueger a commission of five per cent on the sale of Seyfarth's tract, and out of Seyfarth's pocket came $1000 which went to Krueger, although under the terms of his agreement with Mrs. Mohnk Krueger would not have realized a cent on the sale. Whatever may be said of the form, the deal between Krueger and Seyfarth and the series of transactions between

them which attended the purported sale of Mrs. Mohnk's property were so fused that in a court of chancery they can only be held to have had the effect of putting Krueger in the role of dual agent for Mrs. Mohnk and Seyfarth, with Mrs. Mohnk knowing nothing of the circumstances. In the light of the testimony in the record there is no warrant for disturbing the above findings. *Hoelscher* v. *Hoelscher*, 322 Ill. 406.

Appellant nevertheless insists that Mrs. Mohnk's rights are to be determined in accordance with the terms of her agreement to receive $20,000 net at any time during the period of the agreement, and that whatever occurred subsequent to the execution by her of that agreement could in no way affect her rights or entitle her to rescind the contract of sale, for the reason that she stood to receive thereunder exactly what she said she would accept. There would be considerable force in this line of argument if the document signed by Mrs. Mohnk should be construed not as an agreement under which Krueger became her agent to sell the property but as giving him something in the way of an absolute option upon it. The document will not, however, bear such construction even as a matter of form. (*Hanscom* v. *Blanchard*, 117 Me. 501, 105 Atl. 291; *Hiss* v. *Sutton*, 203 Cal. 459, 264 Pac. 748.) The position of appellant as expressed in his argument is, that the document gave Krueger the exclusive agency for the sale of the property until March 1, 1926, and thereafter until terminated in writing. Taking into consideration, along with the document, the circumstances surrounding its execution, as well as the fact that Krueger designated himself in his contract with Seyfarth as her agent, the necessary conclusion is that at the time the contract between Krueger and Seyfarth was executed there existed between Mrs. Mohnk and Krueger the relationship of principal and agent, carrying with it such duties and obligations upon Krueger's part as the law of principal and agent entailed.

Appellant further insists, however, that it could make no possible difference to whom the Mohnk property was sold; that there was no evidence that it was worth more than $20,000; that it was proved that Seyfarth's property directly adjoining on the north, as well as other property, was sold at practically the same time at the same price, and that Krueger's non-disclosure of Seyfarth's identity as purchaser, together with the relationship between himself and Seyfarth, is altogether immaterial and has no bearing whatever upon the rights of the parties. In short, appellant's position is that in the absence of definite proof of financial injury Mrs. Mohnk has no defense to the contract which Krueger purported to execute in her behalf. Such a position takes an unwarrantedly narrow view of the obligations which arose here out of the relationship between principal and agent. The rule is well established in equity that the relation existing between a principal and agent for the sale of property is a fiduciary one, and the agent, in the exercise of good faith, is bound to keep his principal informed of all matters which may come to his knowledge pertaining to the subject matter of the agency. (*Rieger* v. *Brandt*, 329 Ill. 21.) In *Warrick* v. *Smith*, 137 Ill. 504, where one Johnson was an agent who undertook, for a commission, to sell Smith's land, and upon closing a contract with Warrick as purchaser Warrick paid Johnson $100, the comment of this court was as follows: "It was improper for Johnson to accept money from Warrick while he was acting as Smith's agent. The same man cannot act at the same time as agent for both seller and buyer. His duty to the one is inconsistent with his duty to the other. It was also improper for Warrick to pay money to Johnson when he knew that the latter was in the service of Smith. This act has the appearance of an attempt to bribe the agent to be untrue to the trust reposed in him by his principal." The principal has a right to assume when he employs an agent, unless he is advised to the contrary, that the agent is in a situation

to give to his principal that undivided allegiance and loyalty which the proper performance of the agency requires and that he will remain in that situation. If, without the knowledge and consent of his principal, the agent becomes the agent of the opposite party as well and undertakes by contract to bind his original principal, the law deems the original principal in that transaction to be practically unrepresented, and any bargain in his name or act done on his account is usually voidable at his option. The principal need not show himself injured, and his right to repudiate the transaction is not affected even by the good faith of the opposite party. (Mechem on Agency,—2d ed.— secs. 1206, 2138; *Gordon* v. *Beck,* 196 Cal. 768, 239 Pac. 309; *Napier* v. *Adams,* (Ga.) 143 S. E. 566; *Everhart* v. *Searle,* 71 Pa. 256.) While the law is settled that where a dual agency is disclosed to the principal the agent may act for both and in the absence of proof showing fraud or misrepresentation such agency cannot be questioned, (*Krabbenhoft* v. *Gossau,* 337 Ill. 396,) if the agent is in the secret employment of the purchaser a contract made between the principal and purchaser through the agent's efforts is not binding upon the principal, and that fact is a good defense to a bill for specific performance. (*Adams* v. *Larson,* 279 Ill. 268.) Tested by these well-settled and decisive principles, the contract by which Krueger purported to bind Mrs. Mohnk to sell the land did not give Seyfarth a clear right to specific performance, and under all the circumstances presented by the case it cannot be said that the chancellor abused his discretion in confirming the title in Mrs. Mohnk and dismissing appellant's cross-application.

The decree of the circuit court of Cook county is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*