SIGNAL OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107813. Promulgated June 11, 1943.

*Melvin D. Wilson, Esq.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* The principal issue is whether, during the entire years 1936 and 1937, petitioner was bound by the provisions of a written contract executed prior to May 1, 1936, to refrain from the payment of dividends. If it was, it is entitled to a credit to the extent of its adjused net income for each of the tax years. Revenue Act of 1936, sec. 26 (c) (1). Petitioner executed a written contract on July 31, 1934, under the terms of which it agreed to pay no dividends, and respondent concedes that this contract would have been a proper basis for the credit if it had been in force and effect throughout the taxable years. The promise to pay no dividends, however, was limited to the expiration of the option granted by petitioner's parent to Standard to acquire 52 percent of petitioner's stock. By the terms of the agreement, "Said option shall continue for the period of two (2) years immediately following the date hereof * * *." Consequently, the contract, and with it petitioner's agreement to pay no dividends, would have expired on July 31, 1936, had it not been for the fact that on July 30, 1936, the option and the agreement were extended by the three parties involved for a further period of two years. The present dispute is over the interpretation to be given the earlier agreement and the effect of the instrument of July 30, 1936.

Petitioner advances two arguments. The first is that it was unnecessary to extend the agreement of July 31, 1934, as it would have been enough for the parent company to have extended Standard's option to acquire petitioner's stock. Thus, petitioner would construe the earlier contract to mean that petitioner had agreed to pay no dividends as long as an option with respect to its stock was outstanding and consequently it was bound without any further action on its part during such periods as Delaware and Standard saw fit to extend the option. The second contention is that the agreement of July 30, 1936, in which petitioner joined, was not a new contract, but a mere extension or continuation of the old contract, relating back to July 31, 1934.

We are of opinion that neither of these positions is tenable. The first is based upon an interpretation of the earlier agreement which we are unable to accept. That agreement contained petitioner's promise to pay no dividends before the expiration of "said option." There was no promise, as petitioner assumes, that it would pay no dividends "while its stock was under option (pledge) to Standard." The particular option with respect to which the promise was made was to expire in two years. No provision was made in the contract for its extension or renewal. There is no language in the contract from which we can infer that petitioner intended to be bound beyond the period of two years. Nor can any such intent be gathered from the fact that options had been outstanding since January 1932. There had been no promise in connection with those earlier options to refrain from paying out current earnings in the form of dividends. The option that was granted by Delaware to Standard the day before the original option expired was a new option and not a mere continuation of the old. "It is universally held, not only at law but also in equity, that time is to be regarded as of the essence of options, and an agreement to extend the time must be supported by a valuable consideration, as it is in effect a new option, and it is immaterial that the agreement for an extension is made prior to the expiration of the time limited for the exercise of the original option." 27 R. C. L. 343–344; *Hanscom* v. *Blanchard*, 105 Atl. 291; 117 Me. 501; *Ide* v. *Leiser*, 24 Pac. 695; 10 Mont. 5; *Cummins* v. *Beavers*, 48 S. E. 891; 103 Va. 230. We pass the point whether or not there was an adequate consideration for the renewal in this case, for the authorities leave little doubt that in any event a new option was granted. It follows that the option in effect after July 31, 1936, was not the one during the continuance of which petitioner had promised in the earlier agreement to refrain from declaring dividends.

The cases upon which petitioner relies, *Sutcliffe Co.*, 41 B. T. A. 1009; *Commissioner* v. *Haskelite Manufacturing Corporation*, 128 Fed. (2d) 902; and *Commissioner* v. *Struthers Iron & Steel Co.*, 132 Fed. (2d) 995, are not in point. In each of them the taxpayer had borrowed money prior to May 1, 1936, under a promise to pay no dividends as long at the indebtedness existed. The loan was renewed from time to time after the crucial date, new notes were given, and in certain instances new agreements not to pay dividends were executed. The basic question was whether the original debts had been discharged by the giving of new notes; and, following the presumption in the absence of evidence that the giving of a note does not discharge or satisfy a preexisting indebtedness, it was held that the original debts had not been paid. Consequently, the original pre-May 1, 1936, promise to pay no dividends remained in full force and

effect; and a new promise to the same effect was considered unimportant inasmuch as the taxpayers remained bound in any event. In the case at bar, however, petitioner had promised to refrain from the payment of dividends only as long as the "said option" was outstanding; and, as we have said, there is no justification for inferring an intention on the part of the petitioner to be bound indefinitely as long as any option was outstanding. Unless such an intention appeared, the parent company could not bind petitioner, for "It is well settled law, and we believe it requires no citation of authority, that stockholders, as such, have no power to bind a corporation by contract either individually or as a body." *Southern Tire & Rubber Co.*, 18 B. T. A., 210, 214; *Union Telephone Co.*, 44 B. T. A. 607. As a result, we think petitioner can not be sustained in its contention that the so-called extension of the option alone was sufficient to bind it.

With respect to petitioner's second contention, in our opinion, there can be no question but that the agreement signed by the three parties on July 30, 1936, was a new contract and not a mere extension of the old. This is made clear by the cases cited and relied upon by petitioner, which demonstrate the weakness of its contention. *Quinn* v. *Valiquette*, 68 Atl. 515; 80 Vt. 434; *Helena Light & Railway Co.* v. *Northern Pacific Ry. Co.*, 186 Pac. 702; 57 Mont. 93; *Sanders* v. *Wender*, 265 S. W. 939; 205 Ky. 422; *Carrano* v. *Shoor*, 171 Atl. 17; 118 Conn. 86; *Johnson* v. *Meyers*, 177 Pac. 631; 91 Ore. 179. With one exception they are cases where provision was made in an original contract or lease for extension or renewal at the option of one of the contracting parties. Decision in each case turned upon whether the original agreement contained merely a covenant to renew or granted an option to extend. The settled principle was applied, that the former requires the execution of a new contract, the covenant merely giving one of the parties the right to demand its execution, whereas the latter requires no new contract but is a present demise of the right to extend the period of the existing contract upon the same terms.

In the present case there was no provision whatever in the 1934 contract for either a renewal or an extension. None of the parties alone could have extended it, and none had the right to demand that it be renewed. This serves to distinguish this case from those relied upon by petitioner. If a contract executed pursuant to a covenant to renew is a new contract, *a fortiori* this is true where nothing is said as to renewal. In this case the old contract would have expired unless a new contract had been executed. That could be done, as in fact it was, only by a new meeting of the minds of the various parties. They could have agreed upon any terms they desired. It so happens that they decided to contract upon the same terms as those contained in the expiring contract and, for convenience, instead of rewriting that

contract, they specified merely that it should be extended. That does not mean, however, that there was not a new meeting of the minds and the formation and execution of a new contract. It follows that petitioner, after July 31, 1936, was not bound by a written contract executed prior to May 1, 1936, to refrain from the payment of dividends.

Having concluded that petitioner is not entitled to credits by reason of a 'contract restricting the payment of dividends, we are brought to petitioner's alternative contention under section 501 of the Revenue Act of 1942. Section 501 (a) (2) of the Revenue Act of 1942, so far as here material, amends section 26 (c) of the Revenue Act of 1936 by allowing a credit to a corporation "having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, * * * if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936." The amount of the credit allowed in such circumstances is "the amount of such deficit."

In the present case petitioner had a deficit on January 1, 1936, of $297,855.74, which the Commissioner concedes on brief should be increased to $300,211.46 to reflect petitioner's liability for Federal income tax for 1935 in the amount of $2,355.72. This adjustment ·is proper in view of the fact that petitioner was on the accrual basis. *United States* v. *Anderson*, 269 U. S. 422. Petitioner's adjusted net income for 1936 was $331,790.36. Petitioner's net profits for the year 1935 amounted to $4,453.50.

The parties are in agreement as to the effect of the California law. Section 346 of Deering's Civil Code of California (1933)[1] provides that a corporation may declare dividends only out of earned surplus, or if there is no earned surplus, then only out of the net profits earned during the preceding accounting period. Inasmuch as petitioner had no earned surplus at the beginning of the tax years, it is agreed that petitioner could have paid dividends only to the extent of its net profits for 1935, which amounted to $4,453.50. Respondent agrees that petitioner is entitled to relief under section 501 (a) (2) for the year 1936, the correct amount to be determined in the recomputation under Rule 50. No such credit is allowable for the year 1937, inasmuch as petitioner had a surplus at the close of 1936 and was not prohibited by state law from distributing dividends during 1937.

---

[1] Section 346. Cash or property dividends. A corporation may declare dividends in cash and/or in property only as follows:

(1) Out of earned surplus;

(2) Despite impairment of stated capital, out of net profits earned during the· next preceding accounting or dividend period which shall not be less than six months nor more than one year in duration;

* * * * * * *

No dividends shall be declared under the preceding paragraphs when there is reasonable ground for believing that its debts and liabilities would thereupon exceed its assets, or that it would be unable to meet its debts and liabilities as they mature.

On reply brief petitioner suggests that the deficit of $300,211.46 at the close of 1935 would have been increased to $304,664.96 if it had distributed its 1935 profits of $4,453.50, as it was entitled to do under California law, and that this should be taken into account, as well as its accruing liability for 1936 undistributed profits tax, in determining the amount of earnings it could have distributed in 1936. There is no merit in these suggestions. Section 501 (a) (2) limits the credit available to deficit corporations to "the amount of such deficit," which is the amount of the deficit "as of the close of the preceding taxable year"; and section 14 of the Revenue Act of 1936 prescribes the formula for computing the tax and defines the "undistributed net income" upon which the surtax is imposed. Provision is made for deducting the normal tax imposed by section 13, but there is no statutory warrant for the curious anomaly of deducting the accruing surtax on undistributed profits in determining the undistributed income that is subject to the surtax.

*Decision will be entered under Rule 50.*