MacNEILL REAL ESTATE, INC.

*vs.*

CLINTON F. RINES ET AL. EXR.

Cumberland.    Opinion, February 7, 1949.

*Berman, Berman and Wernick,* for plaintiff.

*Frank Preti,*
*Verrill, Dana, Walker, Philbrick and Whitehouse,*
for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

MERRILL, J. On exceptions to overruling objections to a report of Referees, acceptance of the report and ordering judgment for the defendants. In this case the plaintiff, MacNeill Real Estate, Inc., a licensed real estate broker, brought an action against the defendant, Clinton F. Rines and Adeline B. Rines, Executrix of the Estate of Henry P. Rines, by whom it had been employed, to recover a commission for producing a customer for, and also a commission for procuring a sale of certain real estate owned by the defendants. The referees found for the defendants with respect to both commissions. At the hearing before this court the plaintiff waived all claim to a commission on the sale. We are therefore only concerned with the claim for a commission for producing a customer for the real estate.

The plaintiff·acted wholly through and by Mrs. Mary J. MacNeill, its treasurer and agent who was a licensed real estate broker. The defendants throughout were represented by their agent, George F. Kelley, Jr. Mrs. MacNeill interested one Clyde S. Esty in the purchase of the property. He agreed to the defendants' price but informed Mrs. MacNeill that he intended to finance the purchase from the sale of property of his own in the future. He was not ready to purchase immediately. Mrs. MacNeill communicated these facts to Mr. Kelley who told her to sign him up. Esty made a down payment of one hundred dollars to Mrs. MacNeill, executed the contract, hereinafter described, which had been prepared by Mrs. MacNeill's attorney. Mrs. MacNeill informed Mr. Kelley of these facts, paid him the one hundred dollars and presented the contract to him for execution. Mr. Kelley accepted the one hundred dollars and

executed the contract.  Mr. Esty was not ready to purchase at the time specified in the contract and obtained one or two extensions at the request of Mrs. MacNeill.  Finally, Mrs. MacNeill informed Mr. Kelley that Mr. Esty was not going to purchase the property.  Question is made as to whether or not Kelley's execution of the contract was sufficient to bind the estate of Henry P. Rines; but in view of the legal principles upon which we rest the decision in this case, that question becomes of no moment.

The contract, dated April 5, 1945, was upon a printed form entitled "Agreement for Sale of Real Estate."  In it the defendants were described as "Seller" and Esty as "Buyer."  By its terms the Seller agreed to sell, and the Buyer to purchase the described property.  Time was made of the essence of the contract.  The price was $27,500 to be paid, cash on delivery of deed, "One Hundred Dollars having been paid to bind this agreement leaving a balance of twenty-seven thousand four hundred dollars."  The contract also contained the following provisions: "A commission of 5% is to be paid by the Seller to the MacNeill Real Estate, Inc., Mary J. MacNeill agent."  "The above mentioned deposit made upon the signing of this contract shall be retained by the Seller as liquidated damages in case the Buyer fails to carry out this contract."

The above provision relative to the payment of a commission was typewritten into the contract immediately following the payment clause.  A printed clause relative to commission which provided that the commission should be paid *upon the signing of this agreement* was just before the testimonium clause and was not filled in.  The clause as to the retention of the deposit as liquidated damages was a printed clause which an examination of the original exhibit shows originally read "as *part of the* liquidated damages." The underscored words "part of the" were stricken from the executed agreement.

The referees found that the provision for retention by the defendants of the down payment as liquidated damages, should Esty fail to carry out the contract, in the light of all of the circumstances of the case, left the actual purchase by Esty optional on his part. He had a choice between completing the purchase or suffering the loss of the down payment as liquidated damages.

The referees were justified in reaching this conclusion. There was evidence that Esty at the time he executed the contract was not in a position to complete the purchase. His ability to do so depended upon the sale of other property or obtaining financial aid elsewhere. These facts were known by the seller. Time was expressly made of the essence of the contract. The down payment of one hundred dollars was a part of the purchase price, and in case Esty failed "to carry out this contract" was to be retained as liquidated damages. The amount was reasonable and not disproportionate to the actual damages. This provision for the retention of the down payment was *in fact* as well as *in name* a provision for liquidated damages should Esty fail to carry out his agreement. It was not a provision for a penalty in the legal sense of the term, inserted to enforce performance of the contract, or as security therefor.

As well stated in 15 Am. Jur. 691:

> "A provision that a sum of money paid in part performance of a contract shall be forfeited to the payee in case of default is generally held to provide for liquidated damages; that is, it is to be regarded as a substitute for performance, and not as a penalty or merely a security for performance, especially where the damages so agreed on are reasonable and not disproportionate to the actual damages."

Having determined that this contract was an optional contract, the referees applied to this case the rule announced by this court in *Hanscom* v. *Blanchard,* 117 Me. 501; 105 A. 291; 3 A. L. R. 545.

It is unnecessary in this Opinion to reiterate with a citation of authorities all of the general rules governing the respective rights and liabilities between a real estate broker and a vendor of real estate respecting commissions. As applicable to this case they are well stated in *Hanscom* v. *Blanchard, supra,* and the authorities cited therein.

The primary object of a brokerage contract, unless otherwise expressly specified therein, is that the broker procure a sale of the real estate in question on the terms specified by his employer. His duty, however, is discharged by producing a customer ready and willing to meet the exact terms of sale proposed by his employer. If, however, he produces a customer who enters into a *mutually enforcible* contract with the owner for the purchase and sale of the real estate in question, upon terms satisfactory to the owner, the broker is entitled to his commission whether or not the customer actually carries out his contract. The principal is deemed to have accepted the contract in lieu of exact performance of the broker's contract.

Whatever may be the rule in other states, this court in *Hanscom* v. *Blanchard, supra,* decided that when a contract to purchase is substituted for an actual sale, it is a prerequisite to the owner's liability for commissions to the broker that such contract bind the purchaser *to make the purchase;* that if the purchaser is given an option between making the purchase and the forfeiture of the down payment, the contract is not such a mutual contract as will entitle the broker to a commission unless the purchase be consummated or consummation be prevented by the seller. In the instant case, the referees ruled that the following clause in the contract,

> "The above mentioned deposit made upon the signing of this contract shall be retained by the SELLER as liquidated damages in case the BUYER fails to carry out this contract"

taken together with all of the circumstances of the case gave the buyer the option of either carrying out the purchase or forfeiting the down payment as liquidated damages; and as the sale was not consummated wholly because of the fault of Esty, the plaintiff was not entitled to a commission. The exceptions are in effect all directed to this ruling by the referees who relied upon *Hanscom* v. *Blanchard, supra,* and authorities cited therein for such ruling. In *Hanscom* v. *Blanchard,* the contract contained the following clause:

> "In the event that the party of the second part shall fail to fulfill the agreements herein entered into, then the sum of one thousand dollars already acknowledged as paid shall be forfeited to the party of the first part."

Unless there is a legal distinction between this clause and the above clause in this case, *Hanscom* v. *Blanchard* is controlling.

It is urged by the plaintiff that the case of *Hanscom* v. *Blanchard, supra,* should be distinguished from the present case because in that case the contract provided for the retention of the down payment as a forfeiture instead of as liquidated damages. It is further suggested that in *Hanscom* v. *Blanchard* the *opinion* does not show that the persons entering into the contract with the owner, except for the above clause, were obligated to make a purchase. To avoid being misled in determining the controlling effect of *Hanscom* v. *Blanchard,* we have examined the original record in that case and find that the contract therein referred to was under seal, contained an express promise on the part of the purchaser to pay on or before a day certain a portion of the purchase price in cash and execute a mortgage to secure a balance of twenty thousand dollars, and that the one thousand dollars which was to be forfeited was to constitute a part of the purchase price so to be paid.

There is no basic difference between a contract which *effectively* allows the purchaser of real estate to avoid carrying out his purchase upon retention by the seller of the down payment, whether such retention be called a forfeiture or liquidated damages. In either event, it is optional on the part of the vendee whether or not he will complete his purchase. This *option* on the part of the vendee is the fundamental reason which prevents the contract from being treated as a substitute for exact performance by the broker. The production of a prospective customer who obtains an option from the owner is not performance or a substitute for performance on the part of a broker who is engaged to make a sale of real estate. The granting of the option by the owner is treated only as a step on his part in aid of the sale which the broker is attempting to effectuate, and will not sustain an action for a commission unless the purchaser either exercises his option or is prevented from exercising it by action of the optionor.

Under the decision in *Hanscom* v. *Blanchard,* a contract containing an agreement to purchase which leaves performance of such agreement optional with the vendee is treated legally as of no more effect than a strict unilateral option. Such was the contract in this case, and the defendants are not liable to pay a commission to the plaintiff under the terms of its contract of employment as a real estate broker.

Of course, by supplemental agreement between the parties, a vendor could make himself liable to pay a broker's commission upon the execution of an optional contract. The plaintiff urges that the clause relative to the payment of a commission in the Esty contract either imposes such liability or is evidence of such an agreement. With respect to this claim the referees said:

> "The statement in Plaintiff's Exhibit '2' that a 'commission of 5% is to be paid by the seller to * * * * *' does not entitle the broker to recover. The plaintiff was not a party to this instrument. Moreover, the printed form upon which the instru-

# 34

> ment was executed contains the skeleton provision for a statement that the owner is to pay a commission of ............ dollars upon the signing of the agreement. This sum, however, was not filled in; and, in place thereof, the provision that the seller is to pay a commission is inserted immediately following the provision for the future transactions that should consummate the sale. It is apparent that the provision was intended to become operative with the provisions for the consummation of sale."

This conclusion, considered in the light of the evidence as to the conduct of the parties, and especially that of the plaintiff with respect to assertion of its claim for commissions is justified by the record presented to us.

The contract was prepared and negotiated by the plaintiff who was fully aware of its terms at the time it procured its execution. It had actual knowledge that it was an optional contract. There is nothing in the record that would justify a finding that Mr. Kelley on behalf of the defendants accepted this optional contract, with liquidated damages of one hundred dollars, as performance by the plaintiff of a brokerage contract requiring payment to it of a commission of one thousand three hundred seventy-five dollars.

As well said in *Reiger* v. *Bigger*, 29 Mo. App. 421, 432, with respect to a broker's claim for a commission of five hundred dollars for negotiating an optional contract, where the amount to be retained in lieu of performance by the purchaser was also five hundred dollars:

> "It is inconceivable that the defendant accepted the contract negotiated by plaintiffs as performance by them of their undertaking, when that contract by its terms secured to the defendant only the sum of five hundred dollars. If the defendant did so, the forfeiture was intended to benefit the broker only, and in no sense can it be deemed an equivalent to the defendant for the performance of the contract. The contract negotiated by the

plaintiffs was not such a contract as they were required to procure, and the defendant did not accept it as such."

Findings of fact by Referees under Rule of Court are final and conclusive if there is any evidence to support them. In this case the findings of fact of the referees are amply justified by the evidence and their legal conclusions drawn therefrom are correct. The presiding justice properly overruled the objections to the referees' report and accepted the same and ordered judgment for the defendants.

There being no legal error on the part of either the referees or the justice presiding, exceptions to his rulings should be overruled.

*Exceptions overruled.*