RICHARD A. MATHURIN
AND ASSOCIATES,
LLC, Plaintiff

v.

Robert E. CROWE, Sr., Defendant

No. CIV.04–29–P–H.

United States District Court,
D. Maine.

Oct. 6, 2004.

John P. Giffune, William C. Knowles, Verrill & Dana, Portland, ME, for Richard A. Mathurin and Associates, LLC, Plaintiff.

Christopher R. Drury, Peter W. Culley, Pierce, Atwood LLP, Portland, ME, for Robert E. Crowe, Sr., Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

The question here is whether a broker engaged to sell a business can recover its commission. The engagement letter provided for a commission only in the event of sale, and no sale ever took place. I conclude that the broker can recover its commission if it proves that it procured a ready, willing and able buyer who made a proposal acceptable to the seller, but that the seller affirmatively prevented consummation of the transaction.

### I. FACTS

The defendant seller has moved for summary judgment. Therefore, I recount the facts in a light most favorable to the plaintiff broker, the nonmoving party.

The seller and the broker signed an engagement letter. The engagement letter provided that the broker's commission would be calculated according to the amount the seller received from the sale of his business. The broker then procured a buyer who offered somewhat less than the seller's price. The seller made a counteroffer that the buyer said he would accept. The buyer and seller then signed a letter of intent at that price. The letter of intent said explicitly that it was not binding on either party. Thereafter, the seller failed (despite repeated requests) to provide the buyer documentation of the financial condition of the business.[1] The seller's profits also increased (because a competitor left the market), leading the seller to conclude that his sales price was too low, and the seller discovered some unexpected tax disadvantages to the sale. The seller thereupon took his business off the market, preventing the sale from occurring. The broker sued the seller for its commission. The seller moved for summary judgment. I GRANT the motion in part and DENY it in part.

### A. Count I: Contract

■ Maine law is clear on the circumstances when a broker's commission is due. According to the Law Court, "[t]he duty of a broker to find a purchaser is generally discharged by producing a customer who is ready, willing and able to meet the exact terms and conditions of sale proposed by the seller." *Chamberlain v. Porter*, 562 A.2d 675, 677 (Me.1989). Although a completed sale is the hoped for and expected outcome of any listing agreement, "the completed transaction is not a condition precedent to the earning of a commission." *Id.*

■ That is the general rule. But it "may be modified by the parties to the listing agreement" and they can make a

---

1. The letter of intent granted the buyer seven days "during which to, jointly with the [Seller] and the independent accountant for the Companies, conduct an investigation satisfactory to the [Buyer] of the financial condition and operating results of the Companies ..." and thirty days "to satisfy [Buyer] as to the quality and condition of the assets of the Companies ...." Crowe Aff. Ex. 4 at 3.

commission contingent upon an actual sale. *Id.* If they make such an agreement, no commission is due until the sale actually takes place. *Id.* The seller here says that is what these parties agreed on. The broker disagrees.

■ In *Chamberlain v. Porter*, the contract provided that the commission was to be paid "from the proceeds at closing." *Id.* Inserting that provision into the listing agreement was enough, the Maine Law Court ruled, "to change the general rule" and to create instead "a condition precedent to the receipt of the commission—the consummated sale had to occur before the broker could be paid." *Id.* Because the sale in *Chamberlain* never occurred, "the designated fund that was to be the source of the commission never existed and Chamberlain's right to a commission never matured." *Id.* On this issue, the facts of this case are indistinguishable from *Chamberlain.* The listing agreement here provides that "Seller shall compensate [the broker] for our services pursuant to the Engagement in accordance with the following schedule:—7.5 percent (7.5%) of the total transaction value." "Total transaction value" is defined as "all of the consideration, *given or received by the Seller* or by the Companies; including, without limitation, cash, checks, promissory notes, securities (at fair market value), earnouts, so called, and the present value of passive employment contracts, consulting contracts and licensing agreements, together with the fair market value of any other consideration *given or received,* or liabilities assumed, whether directly or indirectly, in connection with *the merger, sale, lease, exchange or other disposition* of capital stock, assets or goodwill of the Companies." (emphasis added). But the sale never occurred and no amounts were "given or received." Therefore, in *Chamber-*

*lain*'s words, "the designated fund that was to be the source of [here, the measure of] the commission never existed and [the broker's] right to a commission never matured." 562 A.2d at 677.

■ But there is an exception to the exception. Where a commission is due upon sale, the seller cannot avoid the commission simply by preventing consummation of the transaction. *Labbe v. Cyr,* 150 Me. 342, 111 A.2d 330, 334 (1954); *MacNeill Real Estate v. Rines,* 144 Me. 27, 64 A.2d 179, 183 (1949); *Hanscom v. Blanchard,* 117 Me. 501, 105 A. 291, 292 (1918). Here, the broker has raised a genuine issue of material fact as to whether it was the seller who prevented the sale from going through, either by failing to provide financial information so that the purchaser could perform his due diligence, or by affirmatively withdrawing from the deal once the seller concluded that the business was worth more than the price he had placed on it and that there were tax disadvantages. The seller seeks to distinguish this line of authority by arguing that in each of the Maine cases, the contract of sale was binding at least upon the *seller* and that it was only the *buyer* who was not bound (typically, an option to purchase, either in express terms or in effect). Here in contrast, he argues, the document the seller and buyer signed was only a letter of intent and stated that it was not binding on *either* party. I reject that basis for the distinction. Binding the *seller* does not somehow increase the equities of a broker's right to a commission; after all, it is the seller who is the broker's client. Instead, the rationale of the cases is that the seller should not be able to avoid the commission due upon sale by affirmatively preventing the consummation of a qualifying agreement with a ready, willing and able

buyer.[2] As *Hanscom v. Blanchard* said: "if the optionee is ready and willing to exercise the option, but is prevented by the refusal of the owner to comply with the terms of the agreement, the broker is then entitled to his compensation." 105 A. at 292. There is no reason to treat a letter of intent differently. If there is a listing agreement that makes the broker's commission contingent upon a contract of sale and if the broker produces a purchaser willing to enter into a contract agreeable to the seller and if it is then only the seller who prevents the contract from being performed, under Maine precedents the broker is entitled to be paid. *Accord* Restatement (Second) of Agency § 445 cmt. e (1958).

I conclude therefore, that the broker here is entitled to prove to a factfinder that it produced a would-be purchaser ready, willing and able to purchase the business on terms agreeable to the seller, and that consummation of the transaction thereafter was prevented only by the defendant seller. If the broker can prove those elements, it may pursue damages.[3]

### B. Count II: Unjust Enrichment

■ Count II of the three-count complaint states a claim for unjust enrichment. The defendant seller moved for summary judgment on all three counts. In response, the plaintiff argued only that "Crowe is not entitled to judgment as a matter of law with regard to: (1) Count I—Breach of Contract—because Crowe

obstructed the transaction arranged by Mathurin; and (2) Count III—*quantum meruit*—because, under Maine law, the mere fact that an express contract exists between Crowe and Mathurin does not preclude recovery under that theory." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 1. I conclude, therefore, that the broker is no longer pressing Count II, the unjust enrichment claim. In any event, the defendant is entitled to summary judgment on the unjust enrichment claim under Maine precedents. "The existence of a contractual relationship, 'precludes recovery on a theory of unjust enrichment.'" *Nadeau v. Pitman*, 731 A.2d 863, 867 (Me.1999) (quoting *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 49 n. 1 (Me.1996)). Moreover, there appears to have been no enrichment here since the sale did not take place.

### C. Count III: Quantum Meruit

■ The Maine Law Court has addressed the availability of *quantum meruit* in the context of broker agreements. In *Rivers v. Amato*, 827 A.2d 827, 830 (Me. 2003), the Court stated: "[the broker is] not entitled to a commission based on *quantum meruit* because the [broker] did not satisfy the requirements of the listing agreement and therefore it is not reasonable for the [broker] to expect compensation." Like the case here, the agreement in *Rivers* required an actual sale. Given *Rivers*, the plaintiff broker must either succeed on its contractual argument as I

---

**2.** Compare Illustrations 2 and 3 to Restatement (Second) of Agency § 445.

**3.** The parties have not yet addressed the measure of damages. According to the Restatement (Second) of Agency:

The amount of recovery for damages in such a case is not the specified compensation as such, but the damages which the agent suffers by reason of the breach of

contract. Such damages may coincide in amount with the agreed compensation; if, however, the agent would have had to incur further expense in order to earn such compensation, and these expenses have been saved to him, he is entitled only to a sum equal to the agreed compensation minus the expenses he has thereby saved.

*Id.* § 445 cmt. a.

have outlined it above, or not succeed at all, either on contract or *quantum meruit*. *Quantum meruit* gives it no additional right to recover.

 Nevertheless, the broker argues that "a second implied contract" can justify recovery in *quantum meruit*. Pl.'s Opp'n at 13. Maybe so, but Maine's Law Court has expressed strong misgivings about such a claim:

> When two parties have agreed upon specific and unambiguous terms of compensation for specified services by means of an express contract, as in the present case, the law should be most hesitant to imply a second contract, which covers the same subject matter, if the evidence does not compel an inference that the parties intended to make one.

*Aroostook Valley R.R. Co. v. Bangor & Aroostook R.R. Co.*, 455 A.2d 431, 433 (Me. 1983). To support *quantum meruit* recovery on an implied contract, "there must be a reasonable expectation on the part of the claimant to receive compensation for his services *and a 'concurrent intention' of the other party to compensate him*." *Paffhausen v. Balano*, 708 A.2d 269, 272 (Me.1998) (emphasis added) (quoting *Estate of White*, 521 A.2d 1180, 1183 (Me.1987)). On the summary judgment record here, there is no evidence that meets these requirements, let alone compelling evidence. The seller's statement of material facts along with the broker's response together establish the express written contract between the broker and seller. Nothing in the statements of material facts supports "a second implied contract," or the seller's

intent to pay in the absence of an actual sale, and the broker's legal memorandum does not provide any record citation for its assertion that there was one. In light of the undisputed express contract and the motion for summary judgment based upon it, it is insufficient for the broker to say: "[Seller] has cited nothing in the record to suggest that [broker] cannot put forth such evidence at trial." Pl.'s Opp'n at 13.[4]

## II. CONCLUSION

The defendant's motion for summary judgment is **GRANTED** as to Counts II and III, and **DENIED** as to Count I.

**SO ORDERED.**

---

4. The broker also cites *Gosselin v. Better Homes, Inc.*, 256 A.2d 629, 640 (Me.1969), but *Gosselin* does not support *quantum meruit* recovery here. *Gosselin* simply determined the measure of damages available to a party (a builder) who itself had breached an implied obligation (skillful and workmanlike performance) of the express oral contract on which it was seeking to recover payment from the homeowner who had accepted and used the house erected by the builder. (The court used the reasonable value of the builder's services, but subtracted the amount required to bring the work up to reasonable standards of workmanship.)