1999 ME 19

**Laurie SMITH et al.**

v.

**Alex CANNELL et al.**

Supreme Judicial Court of Maine.

Argued Jan. 6, 1999.

Decided Jan. 28, 1999.

---

John M.R. Paterson (orally), Alan R. Atkins, Todd S. Holbrook, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for plaintiffs.

Ernest J. Babcock (orally), Friedman, Babcock & Gaythwaite, Portland, for defendants Cannell, and Jaret & Cohn.

Stephen W. Hanscom (orally), Crandall, Hanscom, Pease & Collins, P.A., Rockland, for defendant W. & L. Cross.

Before WATHEN, C.J., and RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Laurie Smith and Prudential Akers Real Estate appeal from the summary judgment entered in the Superior Court (Knox County, *Alexander, J.*) in favor of Alexandra Cannell, Jaret & Cohn, Inc., and William and Lois Cross, and the denial of a competing motion for partial summary judgment by Smith and Prudential Akers. On appeal, Smith and Prudential Akers argue: (1) that

they were entitled, on the undisputed facts, to partial summary judgment on the issue of liability; or alternatively (2) that there remain genuine issues of material fact making the entry of summary judgment inappropriate. We affirm the judgment.

## I. Background

[¶ 2] In 1996, William and Lois Cross decided to sell a 1.5 acre parcel of property that they owned on Beauchamp Point in Rockport. To do so, they contacted Jaret & Cohn, Inc., a real estate agency. During 1996, plaintiff Laurie Smith had been a licensed real estate sales agent with Jaret & Cohn, but, after leaving the agency on December 16, 1996, her license to engage in brokerage services became void. Her license was subsequently reinstated when she became a sales agent with Prudential Akers Real Estate on January 6, 1997. During the period between December 16 and January 6, however, Smith was not licensed to act as a broker.[1]

[¶ 3] While she was unlicensed, Smith contacted Matthew and Ellen Simmons regarding the Cross property.[2] She also contacted the Crosses, informing them that Mr. and Mrs. Simmons were "potential purchasers" for the property. Smith then encouraged the Simmonses to visit the property, making tentative plans with the Crosses that would allow them to do so. Smith may also have mailed information concerning the property to the Simmonses. The Simmonses later visited the property without Smith.

[¶ 4] At some point after their visit to the Cross property, Mr. and Mrs. Simmons decided to buy the property, and they asked Jaret & Cohn to arrange the sale. The Simmonses entered into a purchase and sale agreement with the Crosses in early March, and the sale closed on March 14, 1997. Except for her activities in arranging for the Simmonses to visit the property, Smith had no involvement in the transaction. The Crosses paid a commission to Jaret & Cohn at the closing. Jaret & Cohn refused to pay a percentage of that commission to Smith or to Smith's new firm, Prudential Akers. Relying on the usage of trade, Smith and Prudential Akers assert that they are entitled to one-half of the commission paid to Jaret & Cohn.

[¶ 5] Smith and Prudential Akers filed a complaint in Superior Court alleging that Alex Cannell, Jaret & Cohen, and William and Lois Cross were liable to them for breach of contract or, alternatively, for *quantum meruit* or unjust enrichment. The defendants moved for summary judgment, arguing that the Real Estate Brokerage License Act, 32 M.R.S.A. §§ 13001–13239 (1988 & Pamph.1998), precluded the plaintiffs from bringing this cause of action, and precluded the defendants from paying a commission to the plaintiffs. The plaintiffs responded with their own cross-motion for partial summary judgment on the issue of liability. Following oral argument, the Superior Court granted the defendants' motion for summary judgment and denied the plaintiffs' competing motion for summary judgment. Plaintiffs Laurie Smith and Prudential Akers filed this appeal.

## II. Discussion

[¶ 6] When reviewing a decision of the trial court granting summary judgment, we "examine the evidence in a light most favorable to the nonprevailing party to determine whether the court committed an error of law." *Gorham Savings Bank v. Baizley*, 1998 ME 9, ¶ 6, 704 A.2d 398, 400. The trial court appropriately enters summary judgment when "the party that bears the burden of proof on an essential element at trial has presented evidence that, if she presented no more, would entitle the opposing party to a

---

1. Smith entered into a consent agreement with the Maine Real Estate Commission in which she acknowledged that she had, during that period, "conducted real estate brokerage without having been properly licensed." The relevant statute provides that "[i]t is unlawful for any person or entity to engage in real estate brokerage without a current real estate brokerage agency license ... or a license authorizing the person to engage in brokerage activity on behalf of a brokerage agency." 32 M.R.S.A. § 13003 (1988).

2. An agent for Jaret & Cohn—Alexandra Cannell—had previously contacted Mr. and Mrs. Simmons regarding the Cross property, but the Simmonses were not at that time interested in pursuing the information.

judgment as a matter of law." *June Roberts Agency, Inc. v. Venture Properties, Inc.,* 676 A.2d 46, 48 (Me.1996). Where the statements of material facts required by M.R.Civ.P. 7(d) demonstrate that there is no genuine issue as to any material fact set forth in those statements, the trial court applies the law to those facts to determine whether either party is entitled to judgment. *See* M.R.Civ.P. 56(c).

[¶ 7] The material facts here are not in dispute. It is undisputed that Smith had no written contract with the Crosses, Cannell, or Jaret & Cohn, that she reached no oral agreement regarding a commission with any of the defendants, that the services for which she claims entitlement to compensation consisted primarily of conveying information about the subject property over the telephone or through the mail, that the Simmonses eventually bought the subject property, that the Crosses paid a 7% commission to Jaret & Cohn, and that no commission was paid to Smith. It is also agreed that the "usage of trade" in the area would make it reasonable under ordinary circumstances for a *licensed* real estate broker who procured the buyer to expect to receive one-half of the total commission due to the listing broker.[3] It is further undisputed that all of the services rendered by Smith occurred at a time when she was not licensed to provide those services, but that, by the time of the closing, she had regained her license. On these facts, the trial court concluded that, because Smith was not licensed at the time she rendered brokerage services to the sellers, the defendants were entitled to judgment on both of Smith's claims. We agree.

### A. Breach of Contract

■ [¶ 8] The plaintiffs have failed to raise an issue of material fact regarding their claim for breach of contract. The summary judgment record is devoid of evidence that an oral or written contract existed and is devoid of evidence that the parties intended to be bound by any agreement. There is no evidence of any "meeting of the minds" between the parties. *See Smile, Inc. v. Moosehead Sanitary Dist.,* 649 A.2d 1103, 1105 (Me.1994). Thus, there was no contract to be breached. *See Searles v. Trustees of St. Joseph's College,* 1997 ME 128, ¶ 13, 695 A.2d 1206, 1211. The trial court did not err in granting summary judgment on the plaintiffs' contract claim.

### B. Quantum Meruit

■ [¶ 9] The plaintiffs' primary contention is that Smith's efforts entitled her and her new agency to receive the industry standard of one-half of the commission through her claim of *quantum meruit.*[4] Because she seeks payment of a real estate broker's commission, we look for guidance to the statutes addressing the conduct of real estate brokers. The Real Estate Brokerage License Act was enacted to ensure that all those who provide real estate brokerage services are properly licensed with the Real Estate Commission so that their actions may be monitored and regulated by the Commission for the public good. *See* 32 M.R.S.A. § 13061 (1988). In order to protect the public, the Act makes it unlawful for any person to "engage in real estate brokerage without a *current* real estate brokerage agency license." 32 M.R.S.A. § 13003 (1988) (emphasis added). The Act provides further protection to the public by prohibiting a claimant from maintaining any cause of action whatsoever to receive compensation for real estate brokerage services unless she was properly licensed by the Real Estate Commission "at the time the cause of action arose." *See* 32 M.R.S.A. § 13004 (1988).

[¶ 10] Although the plaintiffs concede that their cause of action was premised on the delivery of services by Smith when she

---

3. While the plaintiffs dispute the defendants' assertion that Cannell and Jaret & Cohn had a listing agreement with the Crosses in December of 1996, this dispute is not relevant to the issue before the Court.

4. In the alternative, the plaintiffs argue that they are entitled to recover under a theory of unjust enrichment. Where, as here, the plaintiffs seek recovery for services rendered under an "implied" contract, the appropriate cause of action is one sounding in *quantum meruit. See generally Paffhausen v. Balano,* 1998 ME 47, ¶ 6, 708 A.2d 269, 271.

was not licensed, they argue that the cause of action did not actually arise until after she had become relicensed, specifically, at the time of closing. Accordingly, the plaintiffs urge us to conclude that they were not barred from bringing an action to recover for Smith's services because she had regained her license by the time of the closing and therefore met the statutory threshold of a person who was properly licensed "at the time the cause of action arose."

■■■■ [¶ 11] A cause of action to recover a broker's commission may be implied where the broker proves that she "produced to the seller a ready, willing, and able buyer upon the authorized terms." *Gerstian v. Tibbetts,* 142 Me. 215, 218, 49 A.2d 227 (1946); *accord Chamberlain v. Porter,* 562 A.2d 675, 677 (Me.1989).[5] The point at which a broker produces a buyer who is "ready, willing, and able" will ordinarily be a question of fact. While the plaintiffs allege that the Simmonses did not become ready, willing, and able to purchase the property until after Smith was relicensed, the defendants allege that the Simmonses were ready, willing, and able purchasers when they were first produced by Smith.[6] Such a factual dispute, if material, would preclude entry of summary judgment for either party.[7] However, even if we were to accept the plaintiffs' argument that their cause of action did not arise until after Smith had regained her license, and thus that their claim is not *statutorily* barred, we would nonetheless conclude that the court correctly entered summary judgment for the defendants on the plaintiffs' claim of *quantum meruit.*

[¶ 12] A valid claim for *quantum meruit* requires proof of the following elements:

(1) services ... rendered to the defendant by the plaintiff;

(2) with the knowledge and consent of the defendant; and

(3) under circumstances that make it reasonable for the plaintiff to expect payment. *Paffhausen v. Balano,* 1998 ME 47, ¶ 8, 708 A.2d 269, 271 (quoting *Bowden v. Grindle,* 651 A.2d 347, 351 (Me.1994)); *accord Danforth v. Ruotolo,* 650 A.2d 1334, 1335 (Me. 1994). As to the first element, the parties do not dispute that Smith rendered some form of service to the Crosses. On the second element, although there are factual disputes regarding the knowledge and consent of the defendants to those services, for purposes of this appeal, we assume that the plaintiffs could meet their burden.[8] It is on the third element that our analysis turns. The issue is whether, assuming the facts in the light most favorable to the plaintiffs, Smith's expectation of payment for her services was reasonable under the circumstances. *See Paffhausen,* 1998 ME 47, ¶ 9, 708 A.2d at 272 (citing *Bourisk v. Amalfitano,* 379 A.2d 149, 151 (Me.1977)).

■ [¶ 13] Accepting the facts as the plaintiffs present them, we conclude that it was not reasonable for Smith to expect to receive a commission for her services. Just prior to the transactions at issue here, Smith had been a licensed real estate sales agent. She was expected to know and understand the laws applying to her profession. It is a violation of those laws to engage in brokerage services without a license to do so. *See* 32 M.R.S.A. § 13003. Any person who violates the Act may be prosecuted and punished by a fine of up to $2,000 and imprisonment of up to 6 months. *See* 32 M.R.S.A. § 13005 (1988). Any current or former licen-

---

**5.** This general rule may, of course, be modified by the agreement of the parties, an event not applicable here. *See Chamberlain,* 562 A.2d at 677.

**6.** Alternatively, the defendants assert that Smith did not "produce" the Simmonses because they had been alerted to the availability of the Cross property by Cannell before Smith contacted them.

**7.** The production by a broker of a *potential* buyer does not give rise to a cause of action unless and

until the buyer becomes "ready, willing, and able" to purchase the property on the authorized terms. *See First of Maine Commodities v. Dube,* 534 A.2d 1298, 1300–01 (Me.1987).

**8.** Jaret & Cohn argues that the record is devoid of any fact that could support a claim that it knew or consented to the delivery of services or otherwise agreed to pay over any of its commission. Because we determine that the plaintiffs cannot prevail on their *quantum meruit* claim in any event, we do not reach that issue.

see may be sanctioned by the Real Estate Commission for a violation of the Act. *See* 32 M.R.S.A. §§ 13067, 13068 (1988 & Pamph. 1998); *Golz v. Maine Real Estate Comm'n*, 634 A.2d 1288, 1289–90 (Me.1993).

[¶ 14] In order to further discourage unlicensed activity, the Legislature has prohibited the sharing or splitting of commissions with unlicensed persons by providing that a licensee may be sanctioned for "paying, directly or indirectly, any part or share of his compensation arising or accruing from a real estate brokerage transaction to any person *who is not licensed to perform the service* for which he is or would be compensated." 32 M.R.S.A. § 13067(1)(J) (1988) (emphasis added). Jaret & Cohn, therefore, could not have split the commission with Smith without violating the law and risking the imposition of sanctions, inclusive of the loss of its brokerage license. *See* 32 M.R.S.A. § 13068(2)(D) (1988). Therefore, in order for Smith to have received a commission without placing Jaret & Cohn in the position of violating the Act, it would have been necessary for the Crosses to have paid half of the commission to Jaret & Cohn and the other half directly to Smith. Such an arrangement would have been a purposeful attempt to avoid the restrictions of the licensing laws. It would not be reasonable for a broker to expect payment under those circumstances.

[¶ 15] In sum, we conclude that in light of the language and underlying policy of the Real Estate Brokerage License Act, it is not "reasonable" for any person to expect to receive a commission for real estate brokerage services when all of those services were rendered while that person was not licensed to provide the services. *Cf., e.g., Swafford v. Harris*, 967 S.W.2d 319, 324–25 (Tenn.1998) (refusing to allow recovery under *quantum meruit* theory when to do so would "undermine and subvert strong public policies established to prohibit [certain] unprofessional conduct"). To allow recovery of a broker's commission, founded on the "usage of the trade," to a person who was not licensed to engage in that trade would undermine the express legislative goal of "promoting confidence in the business of real estate brokerage." 32 M.R.S.A. § 13061.

[¶ 16] Therefore, we conclude that Smith, when acting as an unlicensed agent in her contacts with the Crosses, could have had no reasonable expectation that she would be entitled to payment for those services. The trial court did not err in entering summary judgment for the defendants on plaintiffs' *quantum meruit* count.

The entry is

Judgments affirmed.

