STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-654

ALLEGIANCE FINANCIAL
GROUP, INC.,

    Plaintiff/Counterclaim Defendant

v.

                                  JUDGMENT

CAMDEN NATIONAL CORPORATION
d/b/a CAMDEN NATIONAL BANK,

    Defendant/Counterclaimant

Jury-waived trial on the plaintiff's complaint and the defendant's counterclaim was held on October 15-16, 2001. At the close of the evidence, the defendant withdrew both counts of the counterclaim. The plaintiff seeks to recover $10,537.50 based on theories of an account annexed, money had and received, and breach of contract.

In 1998, Michael J. Dell'Olio, managing director of the plaintiff, had lunch with Sue O'Brien, branch manager for the defendant. After discussing Ms. O'Brien's personal finances, the two discussed the plaintiff's putting together a proposal for an investment program for the defendant. After the lunch meeting, Mr. Dell'Olio sent a proposal to Ms. O'Brien on March 3, 1998. See Pl.'s Ex. 1. Randall Richard, president of the plaintiff, and Mr. Dell'Olio met with Ms. O'Brien in April or May 1998 to discuss the proposal. Ms. O'Brien said that she would present the proposal to the bank management. After that meeting, Mr. Richard took over the project.

A meeting was scheduled for June 10, 1998 with Mr. Richard and employees of the defendant. Mr. Richard prepared a report to be handed out at that meeting. See Pl.'s Ex. 12. This report was copyrighted in 1997 and appears to be a standard outline of the method and implementation for providing investment services.

On June 10, Mr. Richard met with Ms. O'Brien; Ms. Westfall, the chief financial officer for the defendant; Charles Wootton, then vice president of the defendant; and Marie Charest. Mr. Richard expected a decision from the defendant whether or not the plaintiff would move forward with the proposal. The defendant's president, Robert Daigle, could not, however, attend the June 10 meeting; he had to be involved in the decision to proceed. There was no discussion with regard to hiring the plaintiff as a consultant and there was no discussion of fees to be paid by the defendant to the plaintiff for consulting work at the June 10 meeting; the meeting was informational. See Def.'s Exs. 2, 3, 4. Mr. Richard sent a letter to Mr. Wootton after the June 10 meeting and stated that the plaintiff looked forward to formalizing a partnership with the defendant. See Pl.'s Ex. 2.

Mr. Richard had a chance meeting with Mr. Wootton at the end of June 1998 at the Maine Bankers Association regional meeting in Newport, Rhode Island. It is after that meeting that the plaintiff alleges it began working for the defendant providing consulting services on a hourly basis, although the invoice reflects charges for work prior to that time. See Pl.'s Ex. 10. After that meeting, Mr. Richard sent to Ms. O'Brien a letter stating that he understood from Ms. O'Brien and Mr.

Wootton that Ms. O'Brien and Mr. Richard would work together developing and implementing a retail investment program. See Pl.'s Ex. 3.

Mr. Richard met with Ms. O'Brien several weeks after the encounter with Mr. Wootton in Rhode Island. He continued to have contact with her on a weekly basis, often on the telephone. On July 28, 1998, Ms. O'Brien reiterated, at Mr. Daigle's request, to Mr. Richard that the defendant had made no decision with regard to its offering alternative investments to it customers and that the defendant had made no decision to hire the plaintiff even if the defendants determined to offer those services.

On July 29, 1998, Mr. Richard met again with various employees of the defendant. See Pl.'s Exs. 4, 5. Mr. Richard asked for this meeting in order to gather information to tailor a proposal to the defendant. On August 27, 1998, a draft report was sent by the plaintiff to Ms. O'Brien. See Def.'s Ex. 1.

During August and September 1998, Mr. Richard drafted his final proposal. He dealt with Ms. O'Brien during this period and she provided information and answers to his questions. See Pl.'s Ex. 6. Mr. Richard drafted the final proposal through which the plaintiff and defendant would provide investment management and financial planning to the defendant's customers. See Pl.'s Ex. 7.

Mr. Richard met with Ms. O'Brien and Ms. Westfall in early September to discuss the proposal. On September 29, 1998, Mr. Richard met with Mr. Daigle, Keith Patten, Ms. Westfall, Mr. Wootton, Mr. Dell'Olio and Neal Richard to discuss the final proposal. Mr. Richard responded to questions generated by the members of

3

the board of directors during Mr. Daigle's discussion with the board regarding the plaintiff's proposal. See Pl.'s Ex. 8. Ultimately, the defendant's board of directors determined not to go forward with implementation of the plaintiff's proposal. The plaintiff then sent an invoice to the defendant for work done in preparing the proposal. See Pl.'s Exs. 9, 10. The defendant has paid nothing to the plaintiff. See Def.'s Ex. 6.

The issue in this case is whether the plaintiff was retained on an hourly basis to consult with the defendant and develop a proposal or whether the plaintiff would be paid only if the defendant's board of directors determined to implement the proposal. There was no discussion with regard to paying the plaintiff on an hourly basis for consulting services. The defendant has never paid an hourly rate for a proposal. It was made clear to the plaintiff that only the board of directors could enter into a contract such as the one alleged by the plaintiff. None of the witnesses who testified for the defendant had the authority to enter into such a contract on behalf of the defendant. Although a financial planning fee may differ from a consulting fee that would be charged to a bank, the discussion of fees by the plaintiff and the defendant involved fees that the defendant's customers would pay to the plaintiff to use their financial services; the defendant would get a percentage of those fees. See Def.'s Ex. 1, pp. 27-30; Def.'s Ex. 2, pp. 2, 7; Def.'s Ex. 5.

The plaintiff has failed to prove that it is entitled to be paid pursuant to any of the alleged theories. See Smith v. Cannell, 1999 ME 19, ¶ 8, 723 A.2d 876, 879 (breach

4

of contract); <u>Sun Lumber v. Loiselle</u>, 593 A.2d 213, 215 (Me. 1991) (account annexed);

<u>Harmony Homes Corp. v. Cragg</u>, 390 A.2d 1033, 1035-36 (Me. 1978).

The entry is

> Judgment is entered in favor of the Defendant and against the Plaintiff on Counts I, II, and III of the Plaintiff's Complaint.

Date: October 23, 2001

Nancy Mills
Justice, Superior Court

CUM-CV-00-654

5

Date Filed  11-01-00      CUMBERLAND      Docket No.  CV 00-654
County

Action  CONTRACT

ALLEGIANCE FINANCIAL GROUP, INC.

CAMDEN NATIONAL CORPORATION dba
CAMDEN NATIONAL BANK

vs.

Plaintiff's Attorney
SUSAN J. SZWED ESQ 775-2838
PO BOX 9715-209
PORTLAND ME 04104

Defendant's Attorney
JOHN J. SANFORD ESQ 236-8836
PO BOX 190, CAMDEN ME 04843

MARY PLATT COOPER ESQ 236-8836
20 MECHANIC ST. PO BOX 190
CAMDEN ME 04843

Date of
Entry