STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-758

REC - CUM -4/13/05

CHERRYFIELD FOODS, INC.

Plaintiff

v.

TIMOTHY BROWN, d/b/a
BLUEBERRY LAND
MANAGEMENT

Defendant

ORDER ON
PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT

Before the court is Plaintiff Cherryfield Foods, Inc.'s ("Cherryfield") motion for partial summary judgment on counts II, IV, V, VI, VII, IX and X of Defendant Timothy Brown, d/b/a Blueberry Land Management's ("Mr. Brown") amended counterclaim.

**UNDISPUTED FACTS**

On April 20, 1998, Cherryfield and Mr. Brown entered into an agreement by which Mr. Brown was to act as Cherryfield's "leaseholder" for a nine-year period, from 1998 through 2007. In 1998, Cherryfield was the owner or leaseholder of approximately 800 acres of blueberry land in western Maine and eastern New Hampshire (known as "Division 5 properties"). Both Cherryfield and Mr. Brown were in the business of growing, managing and harvesting wild blueberries. Their agreement contemplated Mr. Brown managing the Division 5 properties for a commission equal to five cents per pound of blueberries, plus one and a half cents for abnormal travel distances to the grower fields and one

cent per pound station use for all blueberries delivered to Cherryfield through the Brown station in Gray, Maine. The agreement describes the parties' relationship and responsibilities as follows:

> 3. BROWN wishes to act as [Cherryfield's] leaseholder for the time period of 1998 through 2007 and [Cherryfield] wishes BROWN to act as its leaseholder and in its best interest for the time period of 1998 through 2007.
>
> NOW, THEREFORE, the parties hereto agree as follows:
>
> 4. BROWN shall be responsible for the following:
>   a. Perform all management and maintenance on said 800 +/- acres
>   b. Maintain all necessary records of field activities.
>   c. Invoice [Cherryfield] in a timely fashion for billable field work performed at the rates listed in Exhibit A.
>   d. Necessary labor to carry out said field activities.
>   e. Local contact with growers, arrange land purchases and leases for Cherryfield.
>   f. Maintain and manage the BROWN blueberry station in Gray, Maine.
>
> 5. [Cherryfield] shall provide to BROWN and be responsible for the following:
>   a. Management consulting services as necessary.
>   b. Advance necessary chemicals including fertilizers and pesticides as needed.
>   c. Advance money for harvesting.
>   d. Provide additional equipment as necessary.
>   e. Invoice said growers and debit land lease accounts.
>   f. Make all payments to growers and land lease rental payments to landlords.
>   g. Splitting the operational costs related to harvest camps amongst its growers.

The agreement further provided:

> 7. BROWN shall provide [Cherryfield] certificates of insurance coverage concerning Comprehensive General Liability, Automobile Liability, and Workers' Compensation insurances.
> 8. The field work rates per Exhibit A[1] may be renegotiated at the end of any crop year by either party.

---

[1] This rate schedule has not been submitted to the court.

9. In the case of an unsolvable dispute between [Cherryfield] and Brown, after reasonable efforts by both parties, this agreement will end immediately without further notice.

10. This agreement may not be assigned by either party without the express written consent of the other.

Between 1998 and 2003, Mr. Brown regularly performed fieldwork on the properties within his territory, and sent invoices to Cherryfield for his work at the scheduled rates. In addition to paying these invoices[2], Cherryfield periodically advanced money to Mr. Brown upon his request. Mr. Brown only received a commission check at the end of one season, either in 2001 or 2002. Cherryfield SMF, ¶ 24; T. Brown Depo. p. 71. During the 1998-2003 period, Mr. Brown acquired three leases of property in his own name for blueberry properties in New Hampshire. Cherryfield learned of these leases[3], and required Mr. Brown to turn them over, implying that it would cease doing business with him if he did not do so. Mr. Brown turned over the leases to Cherryfield, and continued for some time thereafter to work with them. During the entire course of their relationship, through the fall of 2003, neither Mr. Brown nor Cherryfield asked the other for payment on any outstanding debt.

On August 21, 2003, Mr. Brown terminated the parties' contract with a fax that stated, "Please consider this the official notification of my resignation of the position of lease holder of Division 5, effective immediately." This resignation was accepted by Ragnar Kamp, Cherryfield's president, who indicated that he and Mr. Brown should meet to resolve outstanding business issues. In the fall of 2003, Mr. Brown and Mr. Kamp had a meeting at which Mr. Kamp informed Mr.

---

[2] Mr. Brown disputes that Cherryfield paid all of the invoices, citing to the deposition of his wife, Marilyn Brown, who was the Blueberry Land Management bookkeeper. In her deposition Ms. Brown testified that she could not remember any invoices not paid by Cherryfield, but that she had not gone looking through all of the bills.

[3] Neither party specifies when Mr. Brown acquired the leases, when Cherryfield learned of them, or when Mr. Brown turned them over to Cherryfield.

Brown that Cherryfield had advanced him approximately $98,000 more than the amounts to which he was entitled under the contract. Mr. Kamp demanded that Mr. Brown repay Cherryfield this amount of money, and Mr. Brown refused.

## DISPUTED ISSUES

The parties dispute whether the periodic advances made to Mr. Brown were covered by a budget based on an estimated blueberry crop yield, or whether advances were made with the understanding that Mr. Brown would be independently responsible for repaying any advanced amounts not covered by his year-end commission. [4] Mr. Brown maintains that, although advances were to be taken out of his crop-time commission, Cherryfield never advanced money to him that wasn't part of their estimated budget for the incoming crop. Mr. Brown also argues that some of the advances Cherryfield made to him were to have been invoiced to "growers"[5] and debited on "land lease accounts" under paragraph 5(e) of the agreement and not debited against his commission at all. Finally, Mr. Brown claims that Cherryfield failed to pay him for capital improvements he had made to Division 5 properties, which he asserts he made outside of the scope of the parties' contract, but with a reasonable expectation of payment.

Cherryfield contends that, between 1998 and 2003, it advanced to Mr. Brown more money throughout the season than he was entitled to receive as a commission at the end of the year. This is the basis for $98,000 of the claim

---

[4] Mr. Brown asserts this budget was based on a 1 million pound blueberry yield. According to Cherryfield's information, the crop yields were 781,989 pounds in 1999, 823,765 pounds in 2000, 1,268,740 pounds in 2001, 595,438 pounds in 2002, and 751,952 pounds in 2003. Cherryfield does not supply a crop yield for 1998.

[5] Cherryfield's agreement with Mr. Brown made him its "leaseholder" for Division 5 properties. Some of the properties in Division 5 were owned by Cherryfield, but others were owned by third parties who leased their lands to Cherryfield. These parties are the "growers" referred to by the agreement. The court has no information on the terms of the leases between these growers and Cherryfield.

against Mr. Brown. Equipment belonging to Cherryfield and allegedly retained by Mr. Brown is the basis for the other $17,000 of Cherryfield's claim.

## DISCUSSION

### I.   Request for an Accounting

Count II of Mr. Brown's counterclaim is a request for an accounting. Mr. Brown claims that his relationship with Cherryfield is akin to a joint venture, since his compensation was tied to the success of the venture. This assertion is supported by reference to the contract between the parties, which calls for a commission to be paid to Mr. Brown based on the blueberry yield. A joint venture is a trust relationship that may properly form the basis for an accounting. *See* Horton & McGehee, *Maine Civil Remedies* § 8.2. Thus, Mr. Brown has pointed to a material factual dispute concerning his entitlement to an accounting, sufficient to survive a motion for summary judgment.

### II.   Economic Duress / Business Compulsion, Conversion, and Negligent and Fraudulent Misrepresentation

Mr. Brown alleges in Count VI of his amended counterclaim that Cherryfield should be held liable for economic duress or business compulsion, because Cherryfield demanded that Mr. Brown turn over the Leases, and this demand was backed by an implicit threat to cease doing business with Mr. Brown if he chose not to do so. Maine has not yet recognized a claim for economic duress / business compulsion, but, in *City of Portland v. Gemini Concerts, Inc.* the Law Court indicated that it may recognize it. 481 A.2d 180, 183 (Me. 1994). Under *Gemini*:

> The basic concept of the doctrine of business compulsion is the same as the forms of duress previously recognized in this jurisdiction -- wrongful acts or threats which subvert the will of the

threatened party. *Actions which are not wrongful cannot result in duress.* Whenever a party to a contract seeks the best possible terms, there can be no rescission merely upon the grounds of "driving a hard bargain." Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion. [citations omitted.]

481 A.2d at 183.

If Maine were to recognize the tort of business compulsion, this would not be the case in which to do so. *See id.* Paragraphs 3 and 4 of the parties' contract state that "[Cherryfield] wishes [Mr.] Brown to act in its best interest" during the contract period and that "[Mr.] Brown shall be responsible ... [to] arrange land purchases and leases for [Cherryfield.]" Mr. Brown's actions in arranging leases for himself rather than for Cherryfield could reasonably be understood by Cherryfield as in derogation of their arrangement, and they were entitled to demand that Mr. Brown turn the leases over to them. Cherryfield's alleged "threat" of ceasing to do business with Mr. Brown is not a "wrongful act," however, because Paragraph 9 of the contract provides that, in the event of an "unsolvable dispute" between Mr. Brown and Cherryfield, the parties' agreement would come to an end. Mr. Brown had the choices presented to him by contract: he could keep the leases, creating an "unsolvable dispute," and causing the contract to dissolve, or he could have turned them over to Cherryfield and kept the relationship. Cherryfield's presentation of this choice to Mr. Brown cannot, as a matter of law, be the basis of a claim for business compulsion.[6]

---

[6] Mr. Brown also claims that Ragnar Kamp of Cherryfield told him that he would be blackballed from the blueberry industry if he did not turn the leases over to Cherryfield. Brown's opposing SMF ¶¶ 32-33. However, Mr. Brown's deposition, upon which this statement is based, reveals that this statement was purported to have been made well after Mr. Brown had turned over the

Because the undisputed facts establish that Mr. Brown made a legally enforceable choice to assign the Leases to Cherryfield, he cannot maintain a conversion claim (Count IV) against Cherryfield for lost profits on these leases. *See Doughty v. Sullivan*, 661 A.2d 1112, 1122 (Me. 1995). Consent is an absolute bar to a claim for conversion. *See id.* (stating, "the gist of conversion is an *invasion* of a party's possession or right to possession." (emphasis added.))

Nor can Mr. Brown sustain claims for negligent and fraudulent misrepresentation against Cherryfield (Counts V and VII). These claims are based on Mr. Brown's alleged reliance on Cherryfield's representations about the nature of their contract and whether it allows for Mr. Brown to acquire leases for himself. Such representations are not factual but rather are assertions of opinion about the terms of the parties' contract. *See Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9; 832 A.2d 771, 773. Mr. Brown has not asserted that Cherryfield had sole access to the terms of the contract, nor has he asserted that he was unable to interpret the contract for himself. Thus, Mr. Brown has failed to assert a prima facie case for both fraudulent and negligent misrepresentation. *See id.*

## III. Quantum Meruit and Unjust Enrichment

Mr. Brown claims in counts IX and X of his counterclaim that he made capital improvements to Division 5 properties for which Cherryfield failed to pay him. The contract between the parties does not contemplate Mr. Brown making capital improvements, but Mr. Brown asserts he made improvements with a reasonable expectation of payment, and thus that Cherryfield is liable to him for their value.

---

leases, after the parties had ended their contractual relationship and in the context of Mr. Kamp pressing Mr. Brown for return of the money purportedly owing to Cherryfield.

A valid claim for quantum meruit requires proof of the following elements:

> (1) services . . . rendered to the defendant by the plaintiff;
> (2) with the knowledge and consent of the defendant; and
> (3) under circumstances that make it reasonable for the plaintiff to expect payment.

*Smith v. Cannell*, 1999 ME 19, ¶ 12.

Although Mr. Brown alleges that he made "capital improvements" to Division 5 property, Brown SMF ¶ 12, the record citations after this paragraph do not elaborate on what these improvements were, when they were made, or how much effort they cost him. T. Brown Depo. at 70:21-71:24; 82:6-85:25. Nor does Mr. Brown allege the factual basis of his claimed reasonable expectation of payment for these improvements. *Id.* Thus, Mr. Brown has not set forth a prima facie case for recovery in quantum meruit, and summary judgment on this count is proper. *Smith v. Cannell*, 1999 ME 19 at ¶ 6; *cf. Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13.

Mr. Brown does not defend his claim for unjust enrichment in his opposition to Cherryfield's motion for summary judgment, and summary judgment is granted on that count.

The entry is:

> Plaintiff's motion for partial summary judgment on Count IV (conversion), Count V (negligent misrepresentation), Count VI (business compulsion), Count VII (fraudulent misrepresentation), Count IX (quantum meruit) and Count X (unjust enrichment) of Defendant's counterclaim is GRANTED. Plaintiff's motion for partial summary judgment on Count II (accounting) of Defendant's counterclaim is DENIED.

Dated at Portland, Maine this 3RD day of November, 2005.

Robert E. Crowley
Justice, Superior Court

WILLIAM KAYATTA ESQ
MARK PORADA ESQ
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101

COURTS
nd County
ox 287
ie 04112-0287

WILLIAM ROBITZEK ESQ
PAUL MACRI ESQ
BERMAN & SIMMONS
PO BOX 961
LEWISTON ME 04243-0961