STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-16-327 ✓

DENIS DANCOES, d/b/a THE
DANCOES CO.,

        Plaintiff

v.

MARGARET S. MAREAN and
ERLON H. MAREAN,

        Defendants

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

Before the court is defendants Margaret S. Marean and Erlon H. Marean's motion for summary judgment. For the following reasons, the motion for summary judgment is granted.

FACTS

Defendant Margaret S. Marean is the owner of real property located at 63 Ossipee Trail East in Standish, Maine. (Defs.' S.M.F. ¶ 2.) Plaintiff Dennis Dancoes is an individual doing business as The Dancoes Co. in Falmouth Maine. (Defs.' S.M.F. ¶ 1.)

On July 29, 2014, plaintiff Denis Dancoes met with defendants Margaret S. Marean and Erlon H. Marean and entered into a contract known as the Project Management Agreement. (Defs.' S.M.F. ¶ 12.) Pursuant to this contract, plaintiff would "advise, assist and consult with [the defendants] . . . in connection with the development and management of the property." (Defs.' S.M.F. ¶ 13.) In return, plaintiff would "be compensated by commission only" and the defendants were required to execute an exclusive listing agreement with plaintiff "providing for a 10% commission on the sale . . . of any parcel to a ready willing and able buyer." (Defs.' S.M.F. ¶ 14.)

REC'D CUMB CLERKS OFC
DEC 15 '17 AM 9:42

1

On August, 1, 2014, defendants executed an exclusive right to sell agreement (Agency Agreement). (Defs.' S.M.F. ¶ 3.) Pursuant to the Agency Agreement, defendants granted plaintiff "the exclusive right to sell or lease the property at the sales or lease price $1,750,000 as agreed between [plaintiff and defendant Margaret S. Marean], or, any other price, terms, or considerations, which [defendant Margaret S. Marean] may agree to." (Defs.' S.M.F. ¶ 4.) The term of the agreement was for two years ending on August 1, 2016. (Defs.' S.M.F. ¶ 4.)

The Agency Agreement also provided that defendant Margaret S. Marean "agreed to pay to [plaintiff] a commission of ten percent (10%) of the sale" of the property. (Defs.' S.M.F. ¶ 8.) Pursuant to the Agency Agreement, defendant Margaret S. Marean would be obligated to pay the commission if plaintiff presented her with "a purchaser ready, able, and willing to purchase or lease the property on any terms or conditions, which [defendant Margaret S. Marean] in fact accepts . . . ." (Defs.' S.M.F. ¶ 9.) The Agency Agreement further provided that the commission on the sale of the property "shall be due and payable when the agreement has been executed and at the transfer of title." (Defs.' S.M.F. ¶ 10.)

The Agency Agreement did not specify the amount of the deposit that would be acceptable to defendants or what would happen to the deposit in the event of a default or termination of any contract to purchase. (Defs.' S.M.F. ¶¶ 5-6.) The Agency Agreement also did not specify whether an offer subject to conditions would be acceptable. (Defs.' S.M.F. ¶ 7.)

In January 2015, plaintiff presented defendant Margaret S. Marean an offer from Joy Real Estate, LLC to purchase a portion of the listed property for $300,000.00. (Pl.'s Add. S.M.F. ¶ 44.) Defendant Margaret S. Marean accepted this offer and closed on the sale on May 5, 2015. (Pl.'s Add. S.M.F. ¶¶ 45, 47-49); (Defs.' S.M.F. ¶ 15.) Pursuant to the Agency Agreement, plaintiff received a 10% commission at the closing. (Defs.' S.M.F. ¶ 16.)

2

In mid-May 2016, plaintiff alleges he contacted the defendant Margaret S. Marean to relay an offer from Eli Berkowitz, as trustee of the TBFW Trust, to purchase the remaining portion of the property for $1,250,000.00. (Pl.'s Add. S.M.F. ¶ 57.) According to plaintiff, defendant Margaret S. Marean rejected this offer and stated she wanted the full purchase price of $1,750,000.00 less the $300,000.00 received for the portion of the property sold under the Joy contract. (Pl.'s Add. S.M.F. ¶ 58.) Plaintiff also alleges defendant Margaret S. Marean stated that she no longer wanted to pay the costs associated with developing the remaining portion of the property. (Pl.'s Add. S.M.F. ¶ 59.) Defendants deny that the Berkowitz offer was ever presented to defendant Margaret S. Marean; she did not respond that she wanted the full purchase price and to stop paying the costs of developing the property because the offer was never presented. (Defs.' Reply S.M.F. ¶¶ 57-59.)

Both parties agree that in June 2016, plaintiff presented defendant Margaret S. Marean with an offer to purchase the remaining portion of the property for $1,450,000.00 including an earnest money deposit of $10,000.00. (Defs.' S.M.F. ¶¶ 17-18.) Pursuant to the offer, closing would take place at the earlier of ninety days following Town of Standish approvals for development of the property, or eighteen months from the date of the contract. (Defs.' S.M.F. ¶ 19.) The contract also entitled the buyer to terminate the agreement if, during the due diligence period, the buyer determined that conditions or circumstances existed which rendered the premises unsuitable or impracticable for the buyer's intended use. (Defs.' S.M.F. ¶ 21.)

Both parties agree that this offer was rejected and that defendant Margaret Marean signed and dated the offer next to plaintiff's handwritten statement "I, Margaret S. Marean reject the offer because I am taking the Property of[f] the market." (Defs.' S.M.F. ¶¶ 23-24.) (Pl.'s Reply S.M.F. ¶¶ 23-24.) There is a dispute, however, as to whether defendant Margaret S. Marean believed the

3

property was already off the market and whether she informed plaintiff, prior to his procurement of the Berkowitz Offer, that she intended to take the property off the market. (Pl.'s Add. S.M.F. ¶¶ 55, 66.); (Defs.' Reply Add. S.M.F. ¶¶ 55, 66.) Additionally, the parties dispute whether defendant Margaret S. Marean discussed the possibility of raising the listed sales price of the remaining portion of the property to $2,000,000.00 and reducing the broker's commission from 10% to 5%. (Pl.'s Add. S.M.F. ¶ 69.); (Defs.' Reply Add. S.M.F. ¶ 69.) There is no dispute that the remaining portion of the property has not been sold. (Defs.' S.M.F. ¶ 25.)

Plaintiff filed a complaint on October 18, 2016.[1] In the complaint, plaintiff alleged four causes of action: count I, enforcement of lien; count II, breach of contract; count III, quantum meruit; and count IV, unjust enrichment. Defendants filed an answer and counterclaim on December 22, 2016. Plaintiff answered the counterclaim on January 11, 2017. Defendants filed their motion for summary judgment on August 9, 2017. After the granting of an extension of time on August 30, 2017, plaintiff filed an opposition to defendants' motion for summary judgement on September 11, 2017. Defendants filed a reply on September 18, 2017.

STANDARD OF REVIEW

Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." Stewart-Dore v. Webber Hosp. Ass'n, 2011 ME 26, ¶ 8, 13 A.3d 773 (internal quotations omitted). "To survive a defendant's motion for a summary judgment, a plaintiff must produce evidence that, if

---

[1] The defendants are also named as defendants in a complaint filed by Eli Berkowitz, as Trustee of TBFW Trust, the prospective purchaser of the property. In that complaint, plaintiff seeks an order of specific performance requiring the defendants to sell the unsold portion of the Property to the trust for $1,450,000.00. (Defs.' S.M.F. ¶ 26.)

4

produced at trial, would be sufficient to resist a motion for a judgment as a matter of law" <u>Rodrigue</u> <u>v. Rodrigue</u>, 1997 ME 99, ¶ 8, 694 A.2d 924.

DISCUSSION

### 1. Enforcement of Lien

Plaintiff's first claim is for enforcement of a lien pursuant to 10 M.R.S. § 3255. A lien on property is "incident and security to a legal liability to pay." <u>Bangor Roofing & Sheet Metal Co.</u> <u>v. Robbins Plumbing Co.</u>, 151 Me. 145, 148, 116 A.2d 664, 666 (1955). Plaintiff's enforcement of lien claim is necessarily predicated on the existence of defendants' legal liability to pay. As discussed below, defendants are entitled to a judgment as a matter of law on all of plaintiff's claims for relief. Plaintiff has not raised a genuine issue of material fact with regard to any legal obligation by defendants to pay plaintiff.

### 2. Breach of Contract

Defendants argue that no commission was earned because, pursuant to the terms of the agreement, defendant Margaret S. Marean could accept or reject any offer and the commission was contingent on her acceptance of an offer to purchase. In the alternative, defendants argue that the commission was contingent upon the sale of the property. Plaintiff responds that defendant Margaret S. Marean's refusal to accept the offer was arbitrary, unreasonable, and made in bad faith.

Under Maine law, a broker ordinarily earns a commission when he has procured a buyer who is "ready, willing and able to purchase the property on the terms and conditions specified by the seller and communicated to the broker at the time of the listing or, if no such terms and conditions are communicated to the broker, then upon terms and conditions agreeable to the seller." <u>Bowley v. Paine</u>, 291 A.2d 712, 714 (Me. 1972). The parties, however, are free to modify

5

this general rule through a contract. Chamberlain v. Porter, 562 A.2d 675, 677 (Me. 1989). Absent bad faith, a seller is not liable to pay a commission merely by withdrawing the property from the market prior to the broker earning the commission. Grant v. Dalton, 120 Me. 350, 352, 114 A. 304, 305 (1921). Whether a broker has earned his commission pursuant to the terms of the parties' agreement is a question of fact. First of Maine Commodities v. Dube, 534 A.2d 1298, 1300 (Me. 1987).

Under the listing agreement here, the defendants are required to pay plaintiff a commission when plaintiff procures a ready, willing and able buyer on "any terms or conditions, which owner in fact accepts." (Defs.' S.M.F. ¶ 9.) (emphasis added). The parties have contracted to modify the general rule by creating a condition precedent to the receipt of the broker's commission. See Chamberlain, 562 A.2d at 677 (holding that, pursuant to the parties listing agreement, an actual sale of the property was a "condition precedent to the receipt of the commission.") The condition precedent is that the defendant Margaret S. Marean must in fact accept the terms and conditions of the offer. Because she did not accept the offer, the condition precedent was not met and no commission is owed pursuant to the terms of the listing agreement. Defendants will not be liable to pay a commission if defendant Margaret S. Marean's rejection of the Berkowitz Offer and withdrawal of the property from the market was done in good faith. See Grant, 120 Me. at 352, 114 A. at 305.

In the context of a real estate transaction, bad faith is found where a seller attempts to avoid the payment of a broker's commission yet retains a profit from the broker's efforts, typically by selling directly to the buyer. See id.; First of Maine Commodities v. Dube, No. CV-84-490, 1985 Me. Super. LEXIS 369 at *2-3 (Dec. 20, 1985). Whether a party acted in bad faith is a question of

6

fact. See Crowell v. State, No. CV-85-505, 1986 Me. Super. LEXIS 269 at *29 (Dec 8, 1986); Renaissance Mgmt. Co. v. Conn. Hous. Fin. Auth., 915 A.2d 290, 298 (Conn. 2007).

Plaintiff argues that defendants acted in bad faith by seeking to increase the asking price for the property to $2,000,000.00 and to reduce the plaintiff's commission from ten to five percent of the selling price. Plaintiff does not contend that defendants have attempted to sell the property and the property remains unsold. Plaintiff has not raised an issue of material fact regarding any attempt by defendants to obtain or attempt to obtain a profit from the sale of the property at plaintiff's expense. See Grant, 120 Me. at 352, 114 A. at 305; First of Maine Commodities, 1985 Me. Super. LEXIS 369 at *2-3. Plaintiff has not raised a genuine issue of material fact with regard to defendant Margaret S. Marean's acceptance of the Berkowitz offer or rejection of the offer in bad faith.

### 3. Quantum Meruit

Defendants argue that a quantum meruit claim is not available in the context of broker agreements. Plaintiff argues that defendants' assertion mischaracterizes the law.

A claim for quantum meruit requires proof of the following three elements: "(1) services . . . rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." Smith v. Cannell, 1999 ME 19, ¶ 12, 723 A.2d 876 (quotation omitted). In Rivers v. Amato, the Law Court held that a broker's failure to satisfy the requirements of a listing agreement[2] rendered it unreasonable for the broker to expect payment of a commission. 2003 ME 87, ¶ 10, 827 A.2d 827. The brokers were not entitled to a commission based on quantum meruit. Id. Accordingly, under

---

[2] Pursuant to the listing agreement, the brokers were entitled to a commission only if the property was "sold, conveyed, exchanged or otherwise transferred within [a] six-month extension period." 2003 ME 87, ¶ 9, 827 A.2d 827 (internal quotations omitted). While a contract for sale was entered into during the extension period, the contract was ultimately cancelled and the sale was never completed. Id. ¶ 10.

7

Maine law, no additional right to recover exists in quantum meruit and a plaintiff-broker must succeed on his contract claim in order to recover a commission. Richard A. Mathurin & Assocs., LLC v. Crowe, 338 F. Supp. 2d 157, 161-62 (D. Me. 2004). In Mathurin, the United States District Court reiterated the Law Court's "strong misgivings" about implying a second contract in addition to a listing agreement: "{t]he seller's statement of material facts along with the broker's response together establish the express written contract between the broker and seller. Nothing in the statements of material facts supports "a second implied contract," or the seller's intent to pay in the absence of an actual sale . . . ." Id. at 162. In this case, there is nothing in the statements of fact that suggest that defendants intended to pay plaintiff unless defendant Margaret S. Marean in fact accepted a purchase offer.

Because plaintiff has not raised an issue of material fact with regard to whether he has earned a commission, he has not raised a genuine issue of material fact with regard to whether it is reasonable for plaintiff to expect payment. Rivers, 2003 ME ¶ 10, 827 A.2d 827.

### 4. Unjust Enrichment

Defendants argue that plaintiff's unjust enrichment claim fails as a matter of law because defendants have received no benefit from plaintiff's services. Plaintiff argues that defendants will obtain a benefit if the plaintiff in the related TBFW Trust lawsuit succeeds on his claim for specific performance.

A claim for unjust enrichment requires proof that "(1) the [plaintiff] conferred a benefit on the [defendants], (2) the [defendant]s had appreciation or knowledge of the benefit, and (3) acceptance or retention of the benefit was under circumstances that make it inequitable for [the defendants] to retain the benefit without payment of its value." Estate of Anderson, 2010 ME 10, ¶ 10, 988 A.2d 977 (internal quotations omitted). "The existence of a contractual relationship

8

'precludes recovery on a theory of unjust enrichment.'" <u>Nadeau v. Pitman,</u> 1999 ME 104, ¶ 14, 731 A.2d 863 (quoting <u>June Roberts Agency, Inc. v. Venture Properties, Inc.,</u> 676 A.2d 46, 49 n.1 (Me. 1996).

On this record, plaintiff and defendants had a valid contractual relationship specifying the services that plaintiff will confer upon defendants and the circumstances in which defendants will be obligated to compensate plaintiff for those services. Plaintiff cannot raise a genuine issue of material fact with regard to his claim for unjust enrichment.

The entry is

> Defendants' Motion for Summary Judgment is GRANTED. Judgment is entered in favor of Defendants Margaret S. Marean and Erlon H. Marean and against Plaintiff Denis Dancoes, d/b/a The Dancoes Co., on Plaintiff's Complaint.

Date: December 15, 2017

Nancy Mills
Justice, Superior Court

9